# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RYAN MICHAEL BYLSMA,

        Defendant-Appellant.

FOR PUBLICATION
May 17, 2016
9:00 a.m.

No.  317904
Kent Circuit Court
LC No.  10-011177-FH

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DAVID JAMES OVERHOLT, JR.,

        Defendant-Appellant.

No.  321556
Kent Circuit Court
LC No.  13-005106-FH

Before:  RIORDAN, P.J., and SAAD and MARKEY, JJ.

RIORDAN, P.J.

These cases, which involve the application of the Michigan Medical Marihuana[1] Act ("MMMA"), MCL 333.26421 *et seq*., to a cooperative medical marijuana grow operation and a medical marijuana dispensary, return to this Court on remand from the Michigan Supreme Court for consideration as on leave granted.[2]  They have been consolidated on appeal, as each case

---

[1] Although the MMMA refers to "marihuana," this Court uses the more common spelling, *i.e.*, "marijuana," in its opinions.  *People v Carruthers*, 301 Mich App 590, 594 n 1; 837 NW2d 16 (2013).  Except when directly quoting the statute, we will use the more common spelling in this opinion.

[2] *People v Bylsma*, 498 Mich 913; 871 NW2d 157 (2015); *People v Overholt*, 498 Mich 914; 871 NW2d 158 (2015).

-1-

presents the same issue: whether a defendant, who possessed, cultivated, manufactured, delivered, sold, or transferred marijuana to a patient or caregiver to whom the defendant was not connected through the registration process of the MMMA, is entitled to raise a defense under § 8 of the MMMA, MCL 333.26428. See *People v Bylsma*, 498 Mich 913; 871 NW2d 157 (2015); *People v Overholt*, 498 Mich 914; 871 NW2d 158 (2015). For the reasons set forth below, we conclude that a § 8 affirmative defense may be available to a defendant who sells, transfers, possesses, cultivates, manufactures, or delivers marijuana to and for patients and caregivers to whom he is not connected through the registration process of the MMMA. However, as a necessary prerequisite, such a defendant must fall within the definition of "patient" or "primary caregiver," as those terms are defined, used, and limited under the act. See MCL 333.26423, MCL 333.26426, MCL 333.26427(a), MCL 333.26428.

In Docket No. 317904, we affirm the trial court order denying defendant Ryan Michael Bylsma's motion to dismiss or, in the alternative, permit the assertion of an affirmative defense under § 8 of the MMMA at trial, and remand for further proceedings consistent with this opinion. In Docket No. 321556, we similarly affirm the trial court order denying defendant David James Overholt Jr.'s motion to dismiss and its later ruling that an affirmative defense under § 8 of the MMMA was inapplicable in that case.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. DOCKET NO. 317904

The charges in Docket No. 317904 arise from defendant Bylsma's operation of a "cooperative medical marijuana grow operation" in Grand Rapids, Michigan. The underlying facts of this action were set forth in *People v Bylsma*, 493 Mich 17, 23-24; 825 NW2d 543 (2012):

> Pursuant to § 6 of the MMMA, a qualifying patient and his primary caregiver, if any, can apply to the MDCH for a registry identification card. Defendant Ryan Bylsma did so and, at all relevant times for the purposes of this appeal, was registered with the MDCH as the primary caregiver for two registered qualifying medical marijuana patients. He leased commercial warehouse space in Grand Rapids and equipped that space both to grow marijuana for his two patients and to allow him to assist other qualifying patients and primary caregivers in growing marijuana. A single lock secured the warehouse space, which was divided into three separate booths. The booths were latched but not locked, and defendant moved plants between the booths depending on the growing conditions that each plant required. Defendant spent 5 to 7 days each week at the warehouse space, where he oversaw and cared for the plants' growth. Sometimes, defendant's brother would help defendant care for and cultivate the plants. Defendant had access to the warehouse space at all times, although defense counsel acknowledged that two others also had access to the space.

> In September 2011, a Grand Rapids city inspector forced entry into defendant's warehouse space after he noticed illegal electrical lines running along water lines. The inspector notified Grand Rapids police of the marijuana that was

growing there. The police executed a search warrant and seized approximately 86 to 88 plants. Defendant claims ownership of 24 of the seized plants and asserts that the remaining plants belong to the other qualifying patients and registered caregivers whom he was assisting.

Defendant was charged with manufacturing marijuana in violation of the Public Health Code, MCL 333.7401(1) and (2)(d), subject to an enhanced sentence under MCL 333.7413 for a subsequent controlled substances offense. [Footnotes omitted.]

In the trial court, defendant filed a motion to dismiss under § 4 of the MMMA, MCL 333.26424, reserving his right to later raise an affirmative defense under § 8. The trial court denied defendant's motion. *Id*. at 24. Most relevant to this appeal, the court concluded that defendant failed to establish that he was entitled to immunity under § 4, and because his entitlement to an affirmative defense under § 8 was dependent on whether he fulfilled the requirements of § 4, he also was not entitled to raise an affirmative defense under § 8. *Id*.

Subsequently, this Court granted defendant's application for leave to appeal[3] and affirmed the trial court's decision. This Court agreed that defendant could not avail himself of the § 4 immunity provision and, as a result, was not entitled to assert an affirmative defense under § 8, given that § 8 required compliance with the provisions of § 4. *Bylsma*, 493 Mich at 25.

Defendant appealed this Court's decision to the Michigan Supreme Court, which affirmed in part and reversed in part. *Id*. at 21-22. The Court agreed that defendant was not entitled to immunity under § 4. *Id*. at 21, 33-35. However, it reversed this Court's decision that defendant was necessarily precluded from raising an affirmative defense under § 8 because he failed to satisfy the elements of § 4. Rather, it concluded that § 4 and § 8 are mutually exclusive, and a defendant is not required to establish the elements of § 4 in order to avail himself of the § 8 affirmative defense. *Id*. at 22, 35-36. The Court then declined to address the merits of the § 8 affirmative defense, concluding that it would be "premature" to decide the issue because defendant neither raised that defense nor received an opportunity to present evidence on that defense in the trial court. *Id*. at 36-37. Accordingly, the Court remanded the case back to the trial court for further proceedings. *Id*. at 37.

On remand, defendant filed a second motion to dismiss the charges against him—or, in the alternative, allow him to raise an affirmative defense at trial—under § 8 of the MMMA. In pertinent part, defendant argued that he was entitled to the defense under § 8 because, under the broad terms of that section, he was a "primary caregiver" for 14 different "patients": himself, Brad Verduin, Jeremy Sturdavant, David Taylor, Alohilani May, Larry Huck, Daniel Bylsma, Dennis Rooy, Glen Woudenberg, James Wagner, Eric Bylsma, John Hooper, Daniel Keltin, and Matthew Roest. Defendant acknowledged that most of his "patients" had primary caregivers

---

[3] *People v Bylsma*, unpublished order of the Court of Appeals, entered April 11, 2011 (Docket No. 302762).

other than himself, but he asserted that this fact was not relevant for purposes of § 8, contending that even though § 4 only allowed a qualifying patient to have one primary caregiver and only allowed a primary caregiver to have five qualifying patients,[4] there were no such limitations in § 8. In other words, defendant argued that even though he was not the "Section 4 caregiver" for most of these individuals, he was their "Section 8 caregiver," as each of them (1) had a documented need for medical marijuana, (2) had been issued a medical marijuana identification card, and (3) was receiving assistance from defendant to meet his or her medical marijuana needs. Additionally, defendant argued that it was "reasonably necessary" for him to possess all of the marijuana plants found in his warehouse to ensure the uninterrupted supply of marijuana to himself and each of his other patients. In response to defendant's motion, the trial court held a two-day evidentiary hearing. During his testimony, defendant acknowledged that on the day of the raid, he was registered as a "Section 4" primary caregiver for only two patients, Huck and May. However, because of his training and experience with cultivating marijuana, he believed that he could "help anybody that needed help, as long as they had doctor's recommendations" for the use of medical marijuana, including patients who had registered primary caregivers other than defendant and primary caregivers with patients other than defendant. Many of the individuals associated with defendant's cooperative grow operation also testified regarding their certification as qualified medical marijuana patients or designation as primary caregivers, as well as their relationship with defendant in connection with the cultivation of marijuana. Three licensed Michigan physicians also testified regarding medical certifications that they performed for patients involved in defendant's cooperative grow operation.

The trial court denied defendant's motion to dismiss and held that defendant was precluded from raising an affirmative defense under § 8 at trial. In pertinent part, the trial court concluded:

> 8. Under the MMMA, a "primary caregiver" is "a person who is at least 21 years old and who has agreed to assist with a patient's medical use of marihuana and who has never been convicted of a felony involving illegal drugs." MCL 333.26423(i). Defendant now argues that at the time of the charged offense, he was a primary caregiver for twelve patients. Defendant contends that because the Supreme Court, in [*People v Kolanek*, 491 Mich 382; 817 NW2d 528 (2012),] and this case, ruled that § 4 and § 8 "operate independently", there is no limitation on the number of primary caregivers a single patient may have and, accordingly, the fact that some patients "had designated Section 4 registered caregivers did not prevent them from also designating [defendant] as their Section 8 caregiver." . . . The court is not persuaded by this argument. The record from the January 2011 hearing makes clear that defendant was the primary caregiver for only two patients. Defendant admitted at that time that most of the plants in his warehouse space were for patients other than those with whom he was connected;

---

[4] Defendant erroneously cited § 4 for this proposition. As discussed further below, § 6, not § 4, provides that a primary caregiver may assist no more than five qualifying patients. MCL 333.26426(d).

9. Defendant's position requires interpretation of the MMMA, which the people enacted by initiative petition in November 2008.

\* \* \*

> When giving the words of the MMMA their ordinary and plain meaning as they would have been understood by the electorate, a primary caregiver refers to the patient's first or main caregiver. This Court must presume that every word, phrase and clause in the act has meaning and avoid any interpretation that renders any part of the statute surplusage. To accept defendant's argument that a qualifying patient could have more than one primary caregiver impermissibly renders the word "primary" nugatory and the Act internally inconsistent . . . .

Additionally, concerning defendant's ability to raise a § 8 defense solely with regard to his conduct involving himself, Huck, and May, the trial court concluded that defendant had not presented sufficient evidence to support each element required for the defense under § 8(a).[5]

Subsequently, the trial court denied defendant's motion for reconsideration. Most notably, it reiterated that the record evidence demonstrated that defendant was the primary caregiver for only two patients and rejected defendant's claim that the MMMA allows a qualifying patient to have more than one primary caregiver. Rather, it emphasized that defendant was assisting other primary caregivers with the cultivation of marijuana for patients specifically linked in the registry to those other caregivers, concluding that the MMMA does not permit caregiver-to-caregiver assistance. The trial court also restated its earlier conclusions regarding defendant's failure to establish a question of fact as to each of the elements of a § 8 defense as it pertained to his marijuana-related conduct involving himself or his two qualifying patients.

Defendant filed a second application for leave to appeal in this Court, which was denied.[6] He then filed an application for leave to appeal in the Michigan Supreme Court, which the Court held in abeyance pending its decisions in *People v Hartwick* (Supreme Court Docket No. 148444) and *People v Tuttle* (Supreme Court Docket No. 148971). After the Court issued a consolidated opinion in *People v Hartwick*, 498 Mich 192; 870 NW2d 37 (2015), it remanded this case back to this Court for consideration as on leave granted. *People v Bylsma*, 846 NW2d 921 (2014).

## B. DOCKET NO. 321556

The charges in Docket No. 321556 arise from defendant Overholt's ownership of a medical marijuana dispensary, the Mid-Michigan Compassion Club ("the Club"), in Grand

---

[5] After defendant's second motion to dismiss was denied, the prosecution amended the felony information to add one count of maintaining a drug house, MCL 333.7405(d), and one count of possession of marijuana, MCL 333.7403(2)(d).

[6] *People v Bylsma*, unpublished order of the Court of Appeals, entered November 12, 2013 (Docket No. 317904).

Rapids, Michigan. Defendant Overholt is a registered medical marijuana caregiver for at least one patient.

In March 2013, Grand Rapids police officers executed a search warrant at the Club, discovering various containers, jars, and bags filled with marijuana; several jars of "hash oil"; plastic baggies containing "marijuana candies"; digital scales; and money. Defendant was charged with delivery or manufacture of less than 50 grams of a schedule 1 or 2 controlled substance (Delta 1-Tetrahydrocannabinol), MCL 333.7401(2)(a)(*iv*); delivery or manufacture of less than 5 kilograms or 20 plants of marijuana, MCL 333.7401(2)(d)(*iii*); and maintaining a drug house, MCL 333.7405(d).

The preliminary examination testimony revealed that the Club operated on a membership basis, meaning that any person with a medical marijuana patient or caregiver card could become a member and purchase marijuana through the Club as long as he or she presented the proper documentation and paid the $20 annual fee. The marijuana that defendant sold to Club members was grown by himself or his "network of growers."[7] Originally, defendant sold marijuana to both patients and caregivers through the business. However, following the Michigan Supreme Court's decision in *State v McQueen*, 493 Mich 135; 828 NW2d 644 (2013), defendant, in an effort to remain in compliance with the MMMA, began to allow only caregivers to become members. However, based on the investigating detective's understanding of defendant's operations, defendant continued to sell marijuana directly to some patients even after the *McQueen* decision.

Before trial, defendant moved to dismiss his charges under § 8 of the MMMA, MCL 333.26428, arguing that (1) he was in compliance with the MMMA because any "person"—not just a "patient" or "caregiver"—could claim a defense under § 8(b); (2) the statute does not require all marijuana used for medical purposes to be grown by a patient or caregiver and, as a result, contemplates caregiver-to-caregiver transactions; (3) he only sold marijuana to members of the Club that provided proof that they were "authorized to be in possession of medical marijuana," *i.e.*, caregivers or patients who did not have caregivers; (4) he only possessed an amount of marijuana that was reasonably necessary to ensure the uninterrupted availability of marijuana for his Club members; and (5) he only provided marijuana to individuals who were using it for medical purposes. In response, the prosecution argued, *inter alia*, that defendant could not assert an affirmative defense under § 8 because it only applied to "a patient and a patient's primary caregiver," and the evidence showed that he supplied marijuana to people who were not his patients.

Following a hearing, during which no evidence was presented, the trial court adopted the prosecution's reasoning and denied defendant's motion to dismiss. It emphasized its duty to enforce the law as written and concluded that defendant's position was an improper extension of

---

[7] Later, defendant Overholt's charges were amended. The charge of delivery or manufacture of less than fifty grams of a schedule 1 or 2 controlled substance (Delta 1-Tetrahydrocannabinol), MCL 333.7401(2)(a)(*iv*), was dismissed. One count of delivery or manufacture of a schedule 1, 2, or 3 controlled substance other than marijuana, MCL 333.7401(2)(b)(*ii*), was added.

the MMMA. However, at that time, the trial court did not decide whether defendant would be permitted to raise an affirmative defense under § 8 at trial.[8]

On the date set for trial, the court addressed whether defendant was entitled to raise a § 8 defense at trial even though he was not entitled to dismissal under that section. It concluded that defendant was not entitled to do so, reiterating its obligation to apply the MMMA as written and noting the absence of any provision in the MMMA allowing caregiver-to-caregiver sales of marijuana. Likewise, it stated that it found no provision of § 8 applicable in this case. Thus, the trial court concluded that a § 8 defense was "irrelevant" and that defendant could not present it, adding that it would not reconsider this issue unless the proofs demonstrated that defendant acted in compliance with the MMMA.

Immediately thereafter, defendant accepted a settlement offer presented by the prosecution, under which he pleaded no contest to one count of delivery or manufacture of marijuana in exchange for the dismissal of the remaining counts and a recommendation of no jail time if he closed his business. The plea was conditional upon appellate review of the MMMA. The trial court accepted the plea and sentenced defendant to two years' probation.

Defendant filed a delayed application for leave to appeal in this Court, which was denied.[9] He then applied for leave to appeal in the Supreme Court. As in Docket No. 317904, the Supreme Court held defendant's application in abeyance pending its decisions in *People v Hartwick* (Supreme Court Docket No. 148444) and *People v Tuttle* (Supreme Court Docket No. 148971). *People v Overholt*, 858 NW2d 54 (2015). Following the issuance of its consolidated opinion in *Hartwick*, 498 Mich 192, the Court reconsidered defendant's application for leave to appeal and, in lieu of granting leave, remanded the case back to this Court for consideration as on leave granted.

## II. STANDARD OF REVIEW

"We review for an abuse of discretion a circuit court's ruling on a motion to dismiss[,] but review de novo the circuit court's rulings on underlying questions regarding the interpretation of the MMMA[.]" *Bylsma*, 493 Mich at 26 (footnotes omitted). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013).

## III. RAISING A DEFENSE UNDER § 8 OF THE MMMA

---

[8] See *People v Kolanek*, 491 Mich 382, 412; 817 NW2d 528 (2012) (stating that a trial court has three options when deciding a motion to dismiss under § 8: (1) grant the motion to dismiss, (2) deny the motion to dismiss but allow the defendant to raise the defense at trial, or (3) deny the motion to dismiss and preclude the defendant from raising the defense at trial).

[9] *People v Overholt*, unpublished order of the Court of Appeals, entered June 4, 2014 (Docket No. 321556).

"The possession, manufacture, and delivery of marijuana are punishable criminal offenses under Michigan law." *Hartwick*, 498 Mich at 209. Pursuant to the MMMA, however, " '[t]he medical use of marihuana is allowed under state law to the extent that it is carried out in accordance with the provisions of th[e] act.' " *Id.* (alterations in original), quoting MCL 333.26427(a).[10] Individuals in compliance with the MMMA may claim immunity from arrest and prosecution under § 4, MCL 333.26424, or raise an affirmative defense to prosecution under § 8, MCL 333.26428. See *Hartwick*, 498 Mich at 209. In particular, § 4 "grants broad immunity from criminal prosecution and civil penalties" to registered "qualifying patient[s]" and "primary caregiver[s]" who can satisfy the elements of that section. *Id.* at 210 (alterations in original). On the other hand, § 8 "provides any patient or primary caregiver—regardless of registration with the state—with the ability to assert an affirmative defense to a marijuana-related offense" if that person can satisfy the elements of that section. *Id.* at 226. Notably, "to establish the elements of the affirmative defense in § 8, a defendant need not establish the elements of § 4." *People v Kolanek*, 491 Mich 382, 403; 817 NW2d 528 (2012).

Here, our task is to determine whether a defendant who possesses, cultivates, or manufactures marijuana for a patient or caregiver to whom they are not connected through the MMMA registration process, or who otherwise provides marijuana to such a patient or caregiver, may assert an affirmative defense under § 8. This inquiry requires statutory interpretation of the MMMA.

As an initial matter, we recognize that due regard must be given to the fact that the MMMA is a voter-initiated statute:

> The MMMA was passed into law by initiative. We must therefore determine the intent of the electorate in approving the MMMA, rather than the intent of the Legislature. Our interpretation is ultimately drawn from the plain language of the statute, which provides the most reliable evidence of the electors' intent. But as with other initiatives, we place special emphasis on the duty of judicial restraint. Particularly, we make no judgment as to the wisdom of the medical use of marijuana in Michigan. This state's electors have made that determination for us. To that end, we do not attempt to limit or extend the statute's words. We merely bring them meaning derived from the plain language of the statute. [*Hartwick*, 498 Mich at 209-210 (quotation marks and citations omitted); see also *Bylsma*, 493 Mich at 26.]

---

[10] Contrary to medical marijuana statutes in other jurisdictions, such as California and Colorado, the MMMA does not expressly authorize cooperative medical marijuana enterprises. *Bylsma*, 493 Mich 17, 27, 27 n 26; 825 NW2d 543 (2012). As previously noted by Judge O'CONNELL, Diane Byrum, a spokesperson for the Marijuana Policy Project—the group that drafted the MMMA—once stated "that '[t]he Michigan proposal wouldn't permit the type of cooperative growing that allows pot shops to exist in California.' " *People v Redden*, 290 Mich App 65, 110 n 17; 799 NW2d 184 (2010) (O'CONNELL, J., concurring) (citation omitted; alteration in original).

Stated differently, "[i]f the statutory language is unambiguous, . . . [n]o further judicial construction is required or permitted because we must conclude that the electors intended the meaning clearly expressed." *Bylsma*, 493 Mich at 26 (quotation marks and citations omitted; alterations in original). However, "[o]ur consideration of the availability of the affirmative defense in § 8 . . . is guided by the traditional principles of statutory construction." *Kolanek*, 491 Mich at 397. Accordingly,

> [i]n determining the [drafters'] intent, we must first look to the actual language of the statute. As far as possible, effect should be given to every phrase, clause, and word in the statute. Moreover, the statutory language must be read and understood in its grammatical context. When considering the correct interpretation, the statute must be read as a whole. Individual words and phrases, while important, should be read in the context of the entire legislative scheme. In defining particular words within a statute, we must consider both the plain meaning of the critical word or phrase and its placement and purpose in the statutory scheme. [*People v Jackson*, 487 Mich 783, 790-791; 790 NW2d 340 (2010) (footnotes omitted).]

When defendant Bylsma and defendant Overholt committed the offenses at issue in these cases, § 8 of the MMMA provided, in relevant part:

> (a) Except as provided in section 7, a patient and a patient's primary caregiver, if any, may assert the medical purpose for using marihuana as a defense to any prosecution involving marihuana, and this defense shall be presumed valid where the evidence shows that:

> (1) A physician has stated that, in the physician's professional opinion, after having completed a full assessment of the patient's medical history and current medical condition made in the course of a bona fide physician-patient relationship, the patient is likely to receive therapeutic or palliative benefit from the medical use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition;

> (2) The patient and the patient's primary caregiver, if any, were collectively in possession of a quantity of marihuana that was not more than was reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition; and

> (3) The patient and the patient's primary caregiver, if any, were engaged in the acquisition, possession, cultivation, manufacture, use, delivery, transfer, or transportation of marihuana or paraphernalia relating to the use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition.

(b) A person may assert the medical purpose for using marihuana in a motion to dismiss, and the charges shall be dismissed following an evidentiary hearing where the person shows the elements listed in subsection (a). [MCL 333.26428(a), (b) (footnote omitted).[11]]

Accordingly, under MCL 333.26428(a), "a *patient* and a *patient's primary caregiver*, if any," may assert the medical use of marijuana as an affirmative defense in a marijuana-related prosecution. (Emphasis added.) We agree with defendants that an individual who qualifies as a "patient" or a "primary caregiver" may assert a § 8 defense regardless of his registration status and the registration status of the patient or primary caregiver, if any, with which he is affiliated. See *Hartwick*, 498 Mich at 213, 228; *Kolanek*, 491 Mich at 402. As the Michigan Supreme Court noted in *Hartwick*, 498 Mich at 236, "Those patients and primary caregivers who are not registered may still be entitled to § 8 protections if they can show that their use of marijuana was for a medical purpose—to treat or alleviate a serious or debilitating medical condition or its symptoms." Accordingly, we hold that a defendant who possessed, cultivated, manufactured, sold, transferred, or delivered marijuana to someone with whom he was not formally connected through the MMMA registration process may be entitled to raise an affirmative defense under § 8. However, we also hold that in order for such a defendant to be entitled to raise a defense under § 8, he must qualify as a "patient" or "primary caregiver" *as those terms are defined and limited under the MMMA*. See *Hartwick*, 498 Mich at 209 ("Under the MMMA . . . '[t]he medical use of marihuana is allowed under state law to the extent that it is carried out in accordance with the provisions of th[e] act.' The MMMA grants to persons in compliance with its provisions either immunity from, or an affirmative defense to, those marijuana-related violations of state law.") (footnote omitted; alterations in original), quoting MCL 333.26427(a).

Given the context of these consolidated appeals, it is necessary for us to clarify who constitutes a "patient" and a "primary caregiver" under the MMMA. "[I]n interpreting a statute, this Court must consider both the plain meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme." *People v Beardsley*, 263 Mich App 408, 412; 688 NW2d 304 (2004). At time of the offenses at issue, "patient" was not defined in the MMMA; only "qualifying patient" was defined as "a person who has been diagnosed by a physician as having a debilitating medical condition." MCL 333.26423(h).[12] Nevertheless, the language of § 8 indicates that "patient" is used in that section to denote a person who has been diagnosed by a physician as having a "serious or debilitating medical condition," MCL 333.26428(a)(1)-(3), which is consistent with the meaning of "qualifying patient" under the former version of MCL 333.26423(h). In addition, the statute originally defined "primary caregiver" as "a person who is at least 21 years old and who has agreed to assist with a patient's medical use of marihuana and who has never been convicted of a felony involving illegal drugs."

---

[11] MCL 333.26428 was subsequently amended by 2012 PA 512, effective April 1, 2013. Subsections (a) and (b) are substantively identical.

[12] The current version of the statute, as amended by 2012 PA 512, defines *both* "qualifying patient" and "patient" as "a person who has been diagnosed by a physician as having a debilitating medical condition." MCL 333.26423(i).

MCL 333.26423(g).[13]  Notably, the definition of "primary caregiver" was framed in the singular, indicating that a patient's primary caregiver constituted one person.[14]  Consistent with the syntax of this definition, § 6 of the act provides that "each qualifying patient can have no more than 1 primary caregiver[.]"  MCL 333.26426(d).  Section 6(d) also states that "a primary caregiver may assist no more than 5 qualifying patients with their medical use of marihuana." *Id*.  Again,

> [w]hen considering the correct interpretation, the statute must be read as a whole. Individual words and phrases, while important, should be read in the context of the entire legislative scheme.  In defining particular words within a statute, we must consider both the plain meaning of the critical word or phrase and its placement and purpose in the statutory scheme.  [*Jackson*, 487 Mich at 790-791 (footnotes omitted).]

As such, we hold that to be in compliance with the MMMA—and, therefore, to be eligible to raise a defense under § 8 in a prosecution for marijuana-related conduct, see *Hartwick*, 498 Mich at 209—an individual must either be a "patient" himself or the "primary caregiver" of no more than five qualifying patients, as those terms are defined and understood under the MMMA.

We also conclude that the plain language of § 8 clearly indicates that the affirmative defense available under that section is intended to apply only to a prosecution arising out of activities directly related to a defendant's status as a patient or, if applicable, a defendant's status as a patient's primary caregiver.  As stated *supra*, § 8(a) provides that "a patient *and* a patient's primary caregiver, if any, may assert *the* medical purpose for using marihuana as a defense to any prosecution involving marihuana[.]"  (Emphasis added.)  We believe that the use of the word "and" in this context is conjunctive, joining "patient" and "a patient's primary caregiver" as two limited, and connected, categories of individuals who may raise a § 8 defense.  See *Black's Law Dictionary* (10th ed) (defining "conjunctive/disjunctive canon" as "[t]he doctrine that in a legal instrument, *and* joins a conjunctive list to combine items, while *or* joins a disjunctive list to create alternatives.").  "The" is a definite article "with a specific or particularizing effect."  See

---

[13] The definition, which was amended by 2012 PA 512, now provides:

> "Primary caregiver" or "caregiver" means a person who is at least 21 years old and who has agreed to assist with a patient's medical use of marihuana and who has not been convicted of any felony within the past 10 years and has never been convicted of a felony involving illegal drugs or a felony that is an assaultive crime as defined in section 9a of chapter X of the code of criminal procedure, 1927 PA 175, MCL 770.9a.  [MCL 333.26423(h).]

[14] While we recognize that "[i]f a statute specifically defines a term, the statutory definition is controlling," *People v Lewis*, 302 Mich App 338, 342; 839 NW2d 37 (2013), we find it significant to note that the singular framing of this definition is consistent with the common meaning of "primary."  See *Merriam-Webster's College Dictionary* (11th ed) (defining "primary" as "first in order of time or development" or "something that stands first in rank, importance, or value").

*Robinson v City of Lansing*, 486 Mich 1, 14; 782 NW2d 171 (2010) (quotation marks and citation omitted). Thus, from this language, it is clear that only a patient himself and that patient's primary caregiver may assert a specific patient's "medical purpose for using marihuana" as an affirmative defense. This understanding is confirmed by the fact that the subsequent elements of § 8(a) consistently refer to "*the* patient" and "*the* patient's primary caregiver." (Emphasis added.) Likewise, the Michigan Supreme Court implicitly recognized that a § 8 defense is available only for conduct occurring in the context of an established patient-caregiver relationship when it stated, "A primary caregiver has the burden of establishing the elements of § 8(a)(1) for each patient to whom the primary caregiver is alleged to have unlawfully provided marijuana." *Hartwick*, 498 Mich at 232; see also § 8(a)(3) ("***The** patient and **the** patient's primary caregiver, if any, **were engaged*** in the acquisition, possession, cultivation, manufacture, use, delivery, transfer, or transportation of marihuana or paraphernalia relating to the use of marihuana to treat or alleviate *the patient's* serious or debilitating medical condition or symptoms of *the patient's* serious or debilitating medical condition.") (emphasis added). Therefore, we conclude that the language employed in § 8 presupposes a relationship between the primary caregiver and the patient, so that the marijuana in the possession of the primary caregiver is cultivated or held by that caregiver, or transferred by the caregiver to the patient, in furtherance of the medical use of the marijuana by that particular caregiver's patient.

Accordingly, we find no basis for concluding that a defendant may assert a § 8 defense in a prosecution for conduct through which he possessed, cultivated, manufactured, delivered, sold, or transferred marijuana to an individual who serves as a primary caregiver for other patients or to a patient whom he did not serve as a *primary* caregiver. Stated differently, a defendant may not raise a § 8 defense in a prosecution for patient-to-patient transactions involving marijuana, caregiver-to-caregiver transactions involving marijuana, or other marijuana transactions that do not involve a patient whom the defendant serves as a "*primary* caregiver," and transactions involving marijuana that do not involve the defendant's own "*primary* caregiver," as those terms are defined and expressly limited under the act. Only conduct directly arising from the traditional patient-primary caregiver relationship is subject to an affirmative defense under § 8.

In so holding, we reject defendant Overholt's claim that a § 8 defense is available not only to a "patient" or "primary caregiver," but also to *any* "person" under § 8(b). Contrary to his characterization of the statute, § 8(b) expressly incorporates § 8(a): "A person may assert the medical purpose for using marihuana in a motion to dismiss, and the charges shall be dismissed following an evidentiary hearing where the person *shows the elements listed in subsection (a).*" MCL 333.26428(b) (emphasis added). Section 8(a), in turn, specifically provides that "a patient and a patient's primary caregiver, if any," may assert the defense, and the elements under § 8(a) repeatedly refer to "the patient" and "the patient's primary caregiver." Thus, when read in context, it is clear that § 8(b)'s reference to a "person" is, in fact, a reference to a "patient" or a "primary caregiver" who is able to satisfy the elements under § 8(a).

We also reject defendants' claim that caregiver-to-caregiver transactions are permitted under the MMMA. Contrary to defendant Bylsma's claims on appeal, assisting another patient's caregiver is not equivalent to assisting that patient directly for purposes of § 8. In contending that caregiver-to-caregiver transactions are permitted, both defendants rely on § 6(b)(3), which states that in order for a minor to be eligible to be a "qualifying patient" and receive a registry

identification card, the minor's parent must agree in writing to serve as the minor's primary caregiver and control the acquisition of marijuana for the child. MCL 333.26426(b)(3). From this language, they argue that § 6(b)(3)(C) implicitly recognizes that caregiver-to-caregiver transactions are allowable because the section implies that a parent can be a "primary caregiver" without having to personally cultivate marijuana so long as the parent controls how the child "acquires" marijuana from other sources (*i.e.*, other caregivers).

We first reject the application of this subjection in this case because it is undisputed that defendants' charges did not arise from transactions involving the parents of minor patients. Further, the plain language of § 6(b), both when read in isolation and in the context of the act, does not permit a parent, as the primary caregiver of a qualifying patient who is a minor child, to obtain marijuana from other caregivers. See *Hartwick*, 498 Mich at 209-210. Instead, the provision simply requires the parent to control the child's "acquisition," "dosage," and "frequency of the medical use of" marijuana. "Acquisition" is not defined in the MMMA, but it is defined by *Merriam-Webster's Collegiate Dictionary* (11th ed) as "the act of acquiring."[15] "Acquire" is defined as "to come into possession or control of *often by unspecified means*." *Id.* (emphasis added). Accordingly, § 6 (b)(3)(C) only requires that a parent *control* the way in which a child comes into possession or control of marijuana, meaning, in effect, that a child may not serve as his own caregiver and acquire marijuana himself. Further, consistent with the definition of "acquire," the means of acquisition are unspecified here, and we find no basis for concluding that this provision provides general authority for caregiver-to-caregiver transactions under the MMMA.

Therefore, in sum, a defendant who is not formally affiliated with a patient or primary caregiver through the registration process under the MMMA may raise a defense under § 8, but he must first demonstrate that he qualifies as a "patient" or "primary caregiver" as those terms are defined, and limited, under the MMMA and used in § 8. The plain language of the MMMA indicates that a patient can only have one "primary caregiver," and an individual may only serve as a "primary caregiver" for no more than five patients. MCL 333.26423(g) (defining "primary caregiver" prior to the act's amendment); MCL 333.26426(d). Thus, even though the plain language of § 8 does not specifically require a "primary caregiver" to be connected to a "patient" through the registration process under the MMMA, see *Hartwick*, 498 Mich at 209-210, the defense available under § 8 is limited by other provisions in the act, which restrict the number of primary caregivers that a patient can have and restrict the number of patients that a primary caregiver can serve. Moreover, the affirmative defense available under § 8 is necessarily restricted by the fact that no provision under the MMMA permits an individual to provide marijuana to one or more patients of another caregiver—or cultivate, manufacture, or otherwise possess marijuana on behalf of one or more patients of another caregiver—and therefore qualify as a "primary caregiver" for purposes of § 8.

### III. APPLICATION

---

[15] When a term is not defined in a statute, the dictionary definition of the term may be consulted. *Lewis*, 302 Mich App at 342.

-13-

For the reasons discussed below, no reasonable juror could have concluded that defendant Bylsma and defendant Overholt were entitled to an affirmative defense under § 8, as the undisputed facts of each case demonstrate that neither of them served as a "primary caregiver" or "patient," as those terms are defined and limited under the MMMA and used in § 8, when they operated the cooperative growing operation and medical marijuana dispensary that resulted in the charges brought against them in these consolidated, although factually distinct, cases. Accordingly, the trial courts properly denied their motions to dismiss and concluded that they were precluded from presenting evidence of an affirmative defense under § 8 at trial. See *Kolanek*, 491 Mich at 413 ("[If] no reasonable jury could have concluded that [a defendant] satisfied the elements of the § 8 affirmative defense . . . . as a matter of law, he is precluded from presenting evidence of this defense at trial.").

## A.  DOCKET NO. 317904

In arguing that he is entitled to raise an affirmative defense under § 8, Defendant Bylsma fails to recognize the effect of the statutory definitions of "patient" and "primary caregiver" under the MMMA. He contends that he does not have to be connected to his numerous patients through the MDCH registry to be considered their "primary caregiver" solely based on the fact that "a § 8 defense may be pursued by any defendant, regardless of registration status." Accordingly, he argues that he is entitled to assert a defense under § 8 as long as he demonstrates that each of his "patients" fulfills all of the elements under § 8(a). However, a prima facie showing of each of the elements under § 8(a) is inconsequential unless he first demonstrates that he qualifies as a "primary caregiver" with regard to each patient-caregiver relationship for purposes of § 8. See *Hartwick*, 498 Mich at 232 ("A primary caregiver has the burden of establishing the elements of § 8(a)(1) *for each patient* to whom the primary caregiver is alleged to have unlawfully provided marijuana.") (emphasis added).

As discussed above, § 8 specifically allows "a patient's primary caregiver" or "a patient" to assert the affirmative defense of the medical use of marijuana as long as the elements of § 8(a) are established. MCL 333.26428(a), (b) (emphasis added). At the time of defendant's arrest, the term "primary caregiver" was defined as "a person who is at least 21 years old and who has agreed to assist with a patient's medical use of marihuana and who has never been convicted of a felony involving illegal drugs." MCL 333.26423(g). Reading this definition in isolation, defendant could arguably constitute a "primary caregiver" for all of the patients that he was assisting with the manufacture or cultivation of marijuana. Importantly, though, many of his "patients"—including Wagner, Eric Bylsma, Woudenberg, Hooper, Keltin, and Roest—already had designated themselves as their own primary caregivers or had designated under the MDCH registry primary caregivers other than defendant. Thus, as a practical matter, defendant could not be the "primary caregiver" of these patients, and there is nothing in the MMMA to suggest that a registered patient may have more than one primary caregiver. Rather, as discussed *supra*, § 6 of the MMMA expresses a clear directive that a qualifying patient cannot have more than one primary caregiver. MCL 333.26426(d). As such, defendant is not entitled, under the plain language of § 8(a), to assert an affirmative defense as it relates to registered patients who had primary caregivers other than defendant through the MDCH registry.

Likewise, because he was cultivating marijuana for other primary caregivers who were not themselves patients and, therefore, had no need for medical marijuana, including Dixon

(Keltin's primary caregiver) and VanderZee (Hooper's primary caregiver), defendant is not entitled to raise a § 8 affirmative defense in connection with that conduct. With regard to those individuals, defendant was not a "caregiver" at all, let alone a "primary caregiver," and, as explained previously, caregiver-to-caregiver transactions as not protected by § 8. Further, even if defendant Bylsma could constitute a "primary caregiver" for purposes of § 8 for the two patients who were serving as their own primary caregivers, the evidence revealed that defendant directly assisted significantly more than 5 "patients," which, again, is not permitted under § 6(d). MCL 333.26426(d).

In sum, defendant is not entitled to raise a § 8 defense because he does not constitute a "primary caregiver," as that term is defined and limited under the act, for each of the individuals to whom, or on behalf of whom, he possessed, cultivated, manufactured, or delivered marijuana. See *Hartwick*, 498 Mich at 232. There is nothing in the language of § 8 that allows a patient to have more than one primary caregiver or that allows a third party to possess marijuana plants on behalf of a registered primary caregiver who intends to supply the marijuana to patients connected to that caregiver. Thus, the trial court did not abuse its discretion in denying defendant's motion to dismiss the charges and precluding him from raising a § 8 defense at trial. See *Bylsma*, 493 Mich at 26.

## B. DOCKET NO. 321556

As defendant Overholt expressly concedes on appeal, the evidence produced at the preliminary examination demonstrated that he, as a registered caregiver, sold marijuana to a multitude of caregivers as well as patients who did not have a primary caregiver and, therefore, served as their own caregivers.[16] As such, it is apparent that defendant sold marijuana indiscriminately to any caregiver (or patient) who came into his business with a medical marijuana card. Defendant did not fulfill the definition of "primary caregiver," as that term is defined and limited by the act and used in § 8, with regard to all of those individuals, as an individual is not permitted to have more than one caregiver, and a "primary caregiver" may only serve up to five patients. See *Hartwick*, 498 Mich at 232 (stating that a primary caregiver must establish the elements of § 8(a) with regard to each patient served in order to claim the defense). Further, as explained *supra*, we find no basis for concluding that caregiver-to-caregiver transactions are protected under § 8.

Thus, the trial court did not abuse its discretion in denying defendant's motion to dismiss and preventing him from raising the defense at trial. See *Bylsma*, 493 Mich at 26.

---

[16] "[A]n evidentiary hearing must be held before trial" if a defendant "assert[s] a § 8 defense by filing a motion to dismiss the criminal charges." *People v Carruthers*, 301 Mich App 590, 598; 837 NW2d 16 (2013); see also *id*. at 612. However, we conclude that dismissal was proper in this case because the undisputed facts demonstrated that defendant Overholt was not entitled to a § 8 defense as matter of law due to the fact that he did not qualify as a "patient" or "primary caregiver" for purposes of § 8, regardless of the fact that the trial court did not hold an evidentiary hearing before it entered its ruling.

-15-

IV.  CONCLUSION

In Docket Nos. 317904 and 321556, there was no genuine issue of material fact that neither defendant was entitled to raise an affirmative defense under § 8.  Thus, the trial courts properly denied defendants' motions to dismiss or, in the alternative, raise an affirmative defense under § 8 at trial.  See *Kolanek*, 491 Mich at 412 ("[I]f there are no material questions of fact and the defendant has not shown the elements listed in subsection (a), the defendant is not entitled to dismissal of the charges and the defendant cannot assert § 8(a) as a defense at trial.").

Accordingly, in Docket No. 317904, we affirm the trial court's order denying defendant Bylsma's motion to dismiss or, in the alternative, permit the assertion of an affirmative defense under § 8 of the MMMA at trial, and remand for further proceedings consistent with this opinion. In Docket No. 321556, we affirm the trial court's order denying defendant Overholt's motion to dismiss and its later ruling that an affirmative defense under § 8 of the MMMA was inapplicable in his case.  We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Henry William Saad
/s/ Jane E. Markey