*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

NICHOLE TASHA HOWES,

        Defendant-Appellant.

UNPUBLISHED
January 17, 2019

No. 340608
Muskegon Circuit Court
LC No. 17-001174-FH

Before: MARKEY, P.J., and M. J. KELLY and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right her bench-trial conviction of possession of marijuana with intent to deliver, MCL 333.7401(2)(d)(*iii*), second offense, MCL 333.7413. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 20 months to 8 years' imprisonment. We affirm.

Defendant operated A-1 Holistic, which was housed in a suite in a building located in Muskegon. During the execution of a search warrant covering the suite, police officers discovered a vast amount of marijuana in multiple rooms and areas of the suite. In one room, there was marijuana on a display counter. In a second room, there was marijuana on a display counter and in a box on a shelf. In an office area of the suite, the police found marijuana in two open safes. Marijuana was also located in a UPS bag that defendant was holding when police raided A-1 Holistic. Cash, scales, business records, and marijuana packaging materials were also seized during the search. The marijuana was first photographed where it was found in the suite. Afterwards, it was all dumped together into a single bag and sent to a lab for testing. The total weight of the marijuana was 1909 grams. Defendant had registry identification cards as a patient and as a primary caregiver under the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq*. Defendant had a previous felony marijuana conviction under MCL 333.7401(2)(d)(*iii*) in August 2016.

During an interview with the police, defendant told a detective that she was selling marijuana to any person who had a valid medical marijuana patient or caregiver card. Defendant informed the detective that she had been selling marijuana to about 20 to 25 people a day. After

being confronted with the observations police made during surveillance of her business, she admitted to selling marijuana to about 8 to 12 persons per hour. Defendant informed the interviewing detective that she did not limit her sales to persons who were listed as her patients on her caregiver card. Defendant further told the detective that she and a security guard were the only people working at the business, that the marijuana did not belong to the security guard-- who was paid an hourly rate--, that she owned A-1 Holistic, and that defendant conducted all of the sales. The interrogation was recorded, and the recording was admitted into evidence. There was evidence that the business license for A-1 Holistic was in the name of the security guard, because defendant had prior felony convictions. There is nothing in the record to suggest anything other than it was defendant who owned and possessed the seized marijuana.

Defendant was charged under MCL 333.7401(2)(d)(*iii*) with possession of marijuana with intent to deliver, second offense. Under that particular subsection, any amount of marijuana or marijuana plants would suffice to support the charge, as that subsection pertains to "less than 5 kilograms or fewer than 20 plants." The trial court, when rendering a verdict from the bench, observed that the issue was not whether defendant was illegally possessing marijuana; rather, the relevant question was whether she possessed the marijuana with the intent to illegally deliver it. Accordingly, the court determined that defendant could be found guilty even if all of the marijuana was legally in her possession or if some of the marijuana belonged to the security guard. The trial court concluded:

> Her own statement was that she sells to at least 25 people a day. . . . [S]he has a medical marijuana card. She's allowed to have patients. That does not allow you to sell the marijuana to other people who are not your patients or who you think should come in to get marijuana.

> The statements along with all of the evidence that there is marijuana, that she is at the store, and that these people that come into the store she checks to see if they have marijuana cards. But it doesn't matter if they have marijuana cards and they can legally have marijuana. It doesn't matter that she has legal marijuana on the premises. What matters is that she is delivering this marijuana to people that she is not entitled to deliver it to, which makes her guilty of possession with intent to deliver marijuana.

Before the trial had commenced, the court began an evidentiary hearing to address issues concerning § 4 immunity under the MMMA, MCL 333.26424, and the affirmative defense found in § 8 of the MMMA, MCL 333.26428. Defendant testified that at the time of the raid there were two medical marijuana patients present at A-1 Holistic. Defendant had known both patients for about four years. Defendant testified that she was not the registered caregiver for either patient, but she considered herself to be the caregiver of both patients "outside of the registration." On the basis of this testimony and comments and arguments made by defense counsel at the hearing, it was clear that defendant supplied and intended to supply marijuana to patients who were not listed or identified as defendant's patients under her caregiver registry card. This was entirely consistent with the information defendant provided to police during her interrogation. At the evidentiary hearing, defendant's attorney effectively acknowledged that a § 4 immunity defense was not viable because of caselaw that indicated that a "caregiver" was restricted to possessing and delivering marijuana only in relation to patients connected to the

caregiver through the registration process. With regard to an affirmative defense under § 8, defense counsel conceded that recent decisions by this Court had similarly limited its application to a caregiver's registry-connected patients. However, defense counsel wished to make a record as part of an effort to eventually ask this Court to revisit and reconsider the issue.

Near the end of defendant's direct examination by her attorney, the trial court determined that all of her testimony was irrelevant because ultimately a caregiver cannot provide marijuana to persons other than, at most, the caregiver's five identified patients. See MCL 333.26426(d) ("a primary caregiver may assist no more than 5 qualifying patients with their medical use of marihuana"). The trial court, therefore, ended the examination. Despite the prosecution's objection, the trial court did not allow cross-examination of defendant. The court moved forward and immediately began the bench trial which resulted in defendant's conviction.

On appeal, defendant initially argues that the commingling of the marijuana, which occurred when the police dumped all of the marijuana found at A-1 Holistic into a single bag, precluded her from presenting an immunity defense under § 4 of the MMMA, deprived her of the ability to pursue an affirmative defense under § 8 of the MMMA, and violated her constitutional due process rights under the Fourteenth Amendment. Defendant complains that some of the scattered marijuana may have been deemed in the possession of the security guard when viewed separately, as the security guard was a medical marijuana patient and a caregiver. Defendant further contends that had the police separately weighed the marijuana as found in each specific location in the suite, the amount of marijuana deemed to be in defendant's possession may have been within the permissible MMMA limits for a caregiver.[1] Additionally, defendant maintains that the trial court should have allowed her to fully present her evidence at the pretrial evidentiary hearing in order to further develop her § 4 and § 8 arguments.

To be protected by immunity under § 4, a primary caregiver can only possess and provide marijuana in relation to "each qualifying patient to whom he or she is connected through the department's registration process." MCL 333.26424(b)(1). Indeed, MCL 333.26424(b) more specifically provides:

> A primary caregiver who has been issued and possesses a registry identification card is not subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege, including but not limited to civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau, *for assisting a qualifying patient to whom he or she is connected through the department's registration process with the medical use of marihuana in accordance with this act*. [Emphasis added.]

Accordingly, there simply is no § 4 immunity to a charge of possession of marijuana with intent to deliver when a defendant caregiver possesses marijuana with intent to deliver it to a

---

[1] "For each qualifying patient to whom he or she is connected through the department's registration process, [a primary caregiver may possess] a combined total of 2.5 ounces of usable marihuana and usable marihuana equivalents." MCL 333.26424(b)(1).

person who is not a qualifying patient connected to the caregiver. See *People v Bylsma*, 493 Mich 17, 22; 825 NW2d 543 (2012) (the defendant was not entitled to § 4 immunity because he possessed marijuana on behalf of patients with whom he was not connected through the registration process). Defendant's attorney acknowledged this point at the pretrial evidentiary hearing,[2] and defendant herself testified at the evidentiary hearing about being the "caregiver" to patients who were at A-1 Holistic at the time of the raid, even though she was not actually linked to them for purposes of the registration process. This testimony effectively established that defendant possessed marijuana with the intent to deliver it to patients with whom defendant was not affiliated or linked under her caregiver registry card. And had the trial court allowed the evidentiary hearing to continue, the prosecution would certainly have introduced the recorded interrogation statements defendant made to the detective, further reflecting that defendant possessed and sold marijuana to patients who were not connected to defendant under the MMMA.[3] The sheer number of persons being served at A-1 Holistic on an hourly and daily basis showed that deliveries were not being restricted to registry-linked patients.

The trial court was incorrect in stating that defendant's testimony at the evidentiary hearing was irrelevant. The testimony was relevant with respect to whether defendant was entitled to immunity under § 4: it effectively established that she was not entitled to immunity, which was apparently the gist of the trial court's ruling.[4]

Defendant's commingling argument does not alter our position. Assuming for the sake of argument that defendant had been able to produce evidence showing that some of the marijuana was attributable to or in the possession of the security guard, we note that defendant does not appear to dispute that she possessed at least some of the marijuana. And any amount would have sufficed for purposes of MCL 333.7401(2)(d)(*iii*). Moreover, defendant's testimony evidenced that marijuana defendant possessed was intended to be delivered, at least in part, to patients who were not defendant's patients under her caregiver registry card. Further, as mentioned above, had the trial court continued the pretrial evidentiary hearing, the prosecution plainly would have introduced evidence of defendant's recorded interrogation during which she told the detective that the marijuana did not belong to the security guard and that she sold marijuana to any person who had a marijuana patient card, affiliated or unaffiliated with defendant's caregiver status. There was also the evidence of the high traffic at A-1 Holistic. The trial court accepted all of this evidence as credible.

---

[2] It is certainly arguable that defendant essentially waived any argument concerning § 4 immunity. See *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000).

[3] As part of the bench trial, the trial court treated as credible and gave weight to the evidence regarding defendant's statements to the police, and we have no doubt that the court would also have done so had that evidence been presented at the evidentiary hearing. Again, the interrogation of defendant was recorded.

[4] When the trial court declared the testimony irrelevant, it is evident that what the court meant was that defendant's testimony entirely undermined any claim of § 4 immunity, such that there was no point in proceeding further.

Additionally, despite defendant's having a registry identification card as a caregiver, the continuing validity of that card at the time of the offense for purposes of caregiver immunity under § 4 was, at a minimum, questionable, considering that she had been convicted of a disqualifying controlled-substance felony in August 2016. See MCL 333.26424(b); MCL 333.26423(k) (defining a "caregiver" as "a person who is at least 21 years old and who has agreed to assist with a patient's medical use of marihuana and who has . . . never been convicted of a felony involving illegal drugs . . ."); *People v Hartwick*, 498 Mich 192, 217; 870 NW2d 37 (2015) (to establish immunity under § 4, a defendant must prove, in part, that at the time of the charged offense, he or she "possessed a *valid* registry identification card") (emphasis added); *People v Tackman*, 319 Mich App 460, 470; 901 NW2d 638 (2017) (holding that the defendant had no right to assert the immunity provided by § 4 because it was undisputed that he had been convicted of a disqualifying felony).

In sum, the trial court did not err in rejecting defendant's argument under § 4 of the MMMA.

We find defendant's affirmative defense under § 8 of the MMMA[5] easily dispensed with under this Court's decision in *People v Bylsma (On Remand)*, 315 Mich App 363; 889 NW2d

---

[5] MCL 333.26428(a) provides:

[A] patient and a patient's primary caregiver, if any, may assert the medical purpose for using marihuana as a defense to any prosecution involving marihuana, and this defense shall be presumed valid where the evidence shows that:

(1) A physician has stated that, in the physician's professional opinion, after having completed a full assessment of the patient's medical history and current medical condition made in the course of a bona fide physician-patient relationship, the patient is likely to receive therapeutic or palliative benefit from the medical use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition;

(2) The patient and the patient's primary caregiver, if any, were collectively in possession of a quantity of marihuana that was not more than was reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition; and

(3) The patient and the patient's primary caregiver, if any, were engaged in the acquisition, possession, cultivation, manufacture, use, delivery, transfer, or transportation of marihuana or paraphernalia relating to the use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition.

729 (2016), which, despite defendant's invitation, we decline to challenge for conflict purposes, especially considering that our Supreme Court denied leave in the case, 500 Mich 1009 (2017). In *Bylsma*, 315 Mich App at 384, this Court held:

> Accordingly, we find no basis for concluding that a defendant may assert a § 8 defense in a prosecution for conduct by which he possessed, cultivated, manufactured, delivered, sold, or transferred marijuana to an individual who serves as a primary caregiver for other patients or to a patient whom he did not serve as a *primary* caregiver. Stated differently, a defendant may not raise a § 8 defense in a prosecution for patient-to-patient transactions involving marijuana, caregiver-to-caregiver transactions involving marijuana, *transactions that do not involve a patient for whom the defendant serves as a primary caregiver*, and transactions involving marijuana that do not involve the defendant's own primary caregiver, as "patient" and "primary caregiver" are defined and expressly limited under the act. Only conduct directly arising from the traditional patient and primary-caregiver relationship is subject to an affirmative defense under § 8. [Latter emphasis added.]

Considering defendant's delivery of marijuana to patients not linked to defendant as her qualifying patients, which provided evidence of an unlawful intent to deliver marijuana, and given that defendant fails to point to any evidence indicating that the marijuana was designated solely for defendant's patients under her caregiver registry card, we must conclude that there was no genuine issue of material fact that defendant could not establish the requisite elements set forth in MCL 333.26428(a)(2) and (3). *Hartwick*, 498 Mich at 227. Defendant did not present prima facie evidence of each of the elements in § 8; therefore, an affirmative defense under § 8 was simply not available to defendant. *Id.* In sum, the trial court did not err in rejecting defendant's argument under § 8.[6]

With respect to defendant's assertion that the commingling of the marijuana violated the Fourteenth Amendment, we disagree. Defendant argues that the act of combining all of the marijuana into one bag before weighing it violated defendant's due process rights and precluded her from mounting a defense; consequently, the trial court should have dismissed the charge. Pursuant to the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness, and this standard has long been interpreted to require that a criminal defendant be afforded a meaningful opportunity to present a complete defense. *People v Aspy*, 292 Mich App 36, 48-49; 808 NW2d 569 (2011). As discussed earlier, defendant had no viable defense under either § 4 or § 8 of the MMMA,

---

[6] We also cannot ignore the fact that the evidentiary hearing was followed by a bench trial, not a jury trial, so even if a § 8 affirmative defense should have survived the pretrial hearing, the trial court certainly had no basis to find that the affirmative defense was established. We note that the evidence at trial only further solidified and confirmed that defendant had engaged in unlawful marijuana transactions.

regardless of whether the marijuana was commingled. And to the extent that defendant might have been able to argue that absent the commingling, the amount of marijuana actually in her possession was not sufficient to show an intent to unlawfully deliver the marijuana, such a defense was entirely defeated by her statements to the police and her own testimony at the evidentiary hearing. She unequivocally admitted to delivering marijuana to patients not linked to her caregiver card. There was no violation of defendant's Fourteenth Amendment rights.

Defendant next contends that the prosecutor committed a discovery violation that warranted a severe sanction. It appears that the prosecution failed to timely provide discovery after defendant made a request under MCR 6.201(B). See MCR 6.201(F). Defendant lists items that she claims should have been provided in response to her discovery request but were not produced before the preliminary examination. She does not, however, discuss the majority of the evidence or how the failure to disclose the evidence prejudiced her at trial. Thus, for the most part, defendant has abandoned this claim of error on appeal, *People v Martin*, 271 Mich App 280, 315; 721 NW2d 815 (2006), and we must deem any assumed violation harmless, *People v Elston*, 462 Mich 751, 765-766; 614 NW2d 595 (2000).

Defendant does assert that the failure to disclose the photographic evidence of the marijuana was "critical," given that the officers combined all of the marijuana into one bag. And she maintains that the act of commingling the marijuana deprived her of the ability to present a defense under § 4. For the reasons discussed earlier, defendant had no viable defense under § 4 or § 8; therefore, no sanction was warranted, and any arguable discovery violation relative to the photographs was harmless.

Defendant next argues that the statements she gave to the detective during her interview should not have been admitted at trial because although the detective advised her of her constitutional rights before the interrogation, he did not obtain an explicit waiver of her right to counsel. Defendant conceded below that the detective advised her of her rights before interrogating her and that she had declared to the detective that she understood her rights, including both to remain silent and to have a lawyer present. During the search and before the interrogation, however, defendant had informed the police that she wanted to call a lawyer. Therefore, according to defendant, when the custodial interrogation subsequently occurred, the detective was then required to obtain an explicit waiver of her right to counsel, assuming it was even proper to interrogate her at that point given she had previous invocated her right to counsel.

Defendant acknowledges that she was not yet the subject of a custodial interrogation when she told the police that she wanted to contact an attorney. Defendant's argument ultimately collapses because of this fact. The United States Supreme Court has observed that a person cannot invoke his or her *Miranda*[7] rights "anticipatorily." See, e.g., *Bobby v Dixon*, 565 US 23, 28; 132 S Ct 26; 181 L Ed 2d 328 (2011) (stating that the defendant was not in custody during the previous encounter when he asserted his right to counsel and noting that the Court had never held that a person can invoke his *Miranda* rights anticipatorily and in a context other than a custodial interrogation). Thus, even if one were to conclude that defendant was in custody

---

[7] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

during the period when the officers were searching A-1 Holistic, she was not the subject of an interrogation at that time. This was not a case of officers "reinterrogating" defendant after she asserted the right to counsel. See *Edwards v Arizona*, 451 US 477, 485; 101 S Ct 1880; 68 L Ed 2d 378 (1981). Consequently, under these facts, the heightened waiver requirement set forth in *Edwards* did not apply in this case.[8]

The detective advised defendant of her rights once he decided to question her—that is, he advised her of her right to remain silent and her right to have a lawyer present during questioning. Defendant elected to talk to the detective and did not reassert a desire to speak to an attorney. The prosecution is not required to show that a waiver of *Miranda* rights was express, and an implicit waiver is sufficient to admit a suspect's statement into evidence. *Berguis v Thompkins*, 560 US 370, 384; 130 S Ct 2250; 176 L Ed 2d 1098 (2010); *North Carolina v Butler*, 441 US 369, 373; 99 S Ct 1755; 60 L Ed 2d 286 (1979) (a person may waive his or her right to remain silent, as well as the right to counsel, absent an express written or oral statement of waiver). If the prosecution establishes that a *Miranda* warning was given and that the defendant gave an uncoerced statement, "this showing, standing alone, is insufficient to demonstrate a valid waiver of *Miranda* rights." *Berguis*, 560 US at 384 (quotation marks omitted). "The prosecution must make the additional showing that the accused understood these rights." *Id.* Here, defendant, a fourth-offense habitual offender, proceeded to make an

---

[8] In *Maryland v Shatzer*, 559 US 98, 104-105; 130 S Ct 1213; 175 L Ed 2d 1045 (2010), the Supreme Court explained the nature of *Edwards*, stating:

> The rationale of *Edwards* is that once a suspect indicates that he is not capable of undergoing custodial questioning without advice of counsel, any subsequent waiver that has come at the authorities' behest, and not at the suspect's own instigation, is itself the product of the inherently compelling pressures and not the purely voluntary choice of the suspect. Under this rule, a voluntary *Miranda* waiver is sufficient at the time of an initial attempted interrogation to protect a suspect's right to have counsel present, but it is not sufficient at the time of subsequent attempts if the suspect initially requested the presence of counsel. The implicit assumption, of course, is that the subsequent requests for interrogation pose a significantly greater risk of coercion. That increased risk results not only from the police's persistence in trying to get the suspect to talk, but also from the continued pressure that begins when the individual is taken into custody as a suspect and sought to be interrogated—pressure likely to increase as custody is prolonged. The *Edwards* presumption of involuntariness ensures that police will not take advantage of the mounting coercive pressures of prolonged police custody by repeatedly attempting to question a suspect who previously requested counsel until the suspect is badgered into submission. [Citations, alteration, and quotation marks omitted.]

Here, there was no "subsequent" attempt at interrogation—there was simply one interrogation.

uncoerced statement after being read her *Miranda* rights, and she also indicated that she fully understood her *Miranda* rights. Accordingly, we conclude that there had been a valid waiver of defendant's *Miranda* rights to remain silent and to have counsel present during questioning. Reversal is unwarranted.

Finally, defendant argues that the trial court erred when it admitted her testimony from the pretrial evidentiary hearing as substantive evidence against her at trial. Assuming error, we find the error was harmless because it was not outcome determinative, and manifest injustice would not occur by allowing the verdict to stand. MCL 769.26; *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999).

In the instant case, defendant's interrogation with police was properly admitted into evidence. Moreover, during that interrogation, defendant essentially made the same statements that she made at the evidentiary hearing, along with many more damaging comments. Thus, the pretrial testimony added nothing to the evidence against defendant. Accordingly, any error we may be able to assume was harmless.

We affirm.

/s/ Jane E. Markey
/s/ Michael J. Kelly
/s/ Brock A. Swartzle