# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JARED GARRISON REED,

      Defendant-Appellant.

UNPUBLISHED
August 10, 2017

No. 333118
Kent Circuit Court
LC No. 15-003765-FH

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

EILEEN DEE SHAW,

      Defendant-Appellant.

No. 333119
Kent Circuit Court
LC No. 15-003686-FH,
          15-003767-FH

Before: HOEKSTRA, P.J., and MURPHY and K. F. KELLY, JJ.

PER CURIAM.

Defendants were tried jointly before a single jury. In Docket No. 333118, defendant Reed appeals as of right his convictions for delivery of marijuana less than 5 kilograms, MCL 333.7401(2)(d)(*iii*), and maintaining a drug house, MCL 333.7405(1)(d). In Docket No. 333119, defendant Shaw appeals as of right her convictions for delivery of marijuana less than 5 kilograms (3 counts), MCL 333.7401(2)(d)(*iii*); possession of marijuana with intent to deliver less than 5 kilograms (2 counts), MCL 333.7401(2)(d)(*iii*); and maintaining a drug house (2 counts), MCL 333.7405(1)(d). For the reasons explained in this opinion, we affirm.

The present case arises out of defendants' operation of Eco Options, a medical marijuana dispensary with two locations in Kent County. After receiving complaints about Eco Options, police conducted undercover buys at both locations, during which three confidential informants purchased marijuana. Defendant Shaw also sold marijuana to Eric Belanger, a private citizen who was stopped by police as he was leaving one of the dispensaries. Searches of both locations as well as defendant Shaw's vehicle revealed several pounds of marijuana, roughly $8,000 in

-1-

cash, numerous marijuana "medibles," marijuana candy, THC lotion, "RSO capsules" containing THC, hash oil, marijuana oils, marijuana seeds, pipes, syringes, packaging materials, and digital scales. A jury convicted defendants as noted above. Defendants now appeal as of right.

## I. SECTION 8 DEFENSE

On appeal, defendants first argue that their defense attorneys were ineffective because they should have asserted a § 8 defense under the Michigan Medical Marihuana[1] Act (MMMA). In particular, defendants contend that, although they provided marijuana to individuals who were not their registered patients, they may nevertheless claim the protections of § 8 and such a defense should have been raised by their attorneys in a motion before trial under MCL 333.26428(b). We disagree.

Although defendants preserved their ineffective assistance claim, no *Ginther*[2] hearing was held and thus our review is limited to mistakes apparent on the record. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). To prevail on a claim of ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Defense counsel will not be considered ineffective for failing to pursue a futile motion. *People v Brown*, 279 Mich App 116, 142; 755 NW2d 664 (2008).

"Section 8(a) of the MMMA provides any patient or primary caregiver—regardless of registration with the state—with the ability to assert an affirmative defense to a marijuana-related offense." *People v Hartwick*, 498 Mich 192, 226; 870 NW2d 37 (2015). MCL 333.26428 provides the "§ 8 defense" and states in relevant part as follows:

> (a) Except as provided in section 7(b), a patient and a patient's primary caregiver, if any, may assert the medical purpose for using marihuana as a defense to any prosecution involving marihuana, and this defense shall be presumed valid where the evidence shows that:

> (1) A physician has stated that, in the physician's professional opinion, after having completed a full assessment of the patient's medical history and current medical condition made in the course of a bona fide physician-patient relationship, the patient is likely to receive therapeutic or palliative benefit from the medical use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition;

---

[1] This opinion uses the more common spelling "marijuana" except when directly quoting the MMMA.

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

(2) The patient and the patient's primary caregiver, if any, were collectively in possession of a quantity of marihuana that was not more than was reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition; and

(3) The patient and the patient's primary caregiver, if any, were engaged in the acquisition, possession, cultivation, manufacture, use, delivery, transfer, or transportation of marihuana or paraphernalia relating to the use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition.

A § 8 defense "must be raised in a pretrial motion for an evidentiary hearing." *People v Kolanek*, 491 Mich 382, 411; 817 NW2d 528 (2012). See also MCL 333.26428(b).

"A defendant seeking to assert the MMMA's statutory affirmative defense must present prima facie evidence for each element of § 8(a)." *Hartwick*, 498 Mich at 228. The defendant must also establish that he or she is either a " 'patient' or 'primary caregiver' as those terms are defined, and limited, under the MMMA and used in § 8." *People v Bylsma*, 315 Mich App 363, 386; 889 NW2d 729 (2016). A primary caregiver is someone who is at least 21-years-old, and "who has agreed to assist with a patient's medical use of marihuana." MCL 333.26423(k). As set forth in the MMMA, a patient can have only one primary caregiver, and a primary caregiver may assist no more than five patients. MCL 333.26426(d); *Bylsma*, 315 Mich App at 386. It follows that an individual may not claim a § 8 defense as a "primary caregiver" for providing marijuana to the patients of another caregiver or for providing marijuana to another caregiver, including to a registered patient who has elected to act as his or her own caregiver. *Bylsma*, 315 Mich App at 384, 386, 390.[3]

Here, defendants did not qualify as "primary caregivers" under the MMMA, and therefore, § 8 was not available to them. According to the evidence at trial, defendants sold marijuana to Berlanger and three confidential informants who showed defendants a medical marijuana card. However, there is no evidence that either defendant served as "the primary caregiver" for any of the individuals to whom they gave marijuana. To the contrary, all of the individuals were either primary caregivers or registered patients who did not have a primary caregiver and, therefore, served as their own caregivers. *Id.* at 388, 390; *Hartwick*, 498 Mich at 205 n 14. Because the MMMA does not permit caregiver-to-caregiver transactions and an individual is not permitted to have more than one caregiver, defendants could not have been "primary caregivers" for the individuals to whom they sold marijuana. *Bylsma*, 315 Mich App at 388, 390. Indeed, defendant Reed told police that he already had 4 or 5 registered patients, from which it follows that he could not have been the primary caregiver for the individuals in

---

[3] To the extent that defendants argue on appeal that we should not follow *Bylsma*, we note that *Bylsma* is a published opinion of this Court and, as such, it is precedentially binding. See MCR 7.215(C)(2).

question. More generally, defendant Shaw told police that Eco Options simply gave marijuana to people who had medical marijuana cards, provided that they made a "donation." In other words, from her own admissions, it is apparent that she provided marijuana indiscriminately to anyone who came into the business with a medical marijuana card. Such conduct is not protected by the MMMA. *Id.* at 390. Accordingly, a § 8 defense was not available to defendants at trial because neither defendant could demonstrate that he or she qualified as a "primary caregiver" to Berlanger or the confidential informants. *Id*. at 386.

Moreover, defendants have not asserted on appeal, and the record does not indicate, that they would have satisfied the three requirements necessary for a § 8 defense. See MCL 333.26428(a). The only evidence that defendants offer in support of a § 8 defense is the fact that the individuals seeking marijuana possessed medical marijuana cards. But, the mere presentation of medical marijuana cards by these individuals does not presumptively entitle defendants to a § 8 defense. See *Hartwick*, 498 Mich at 203, 232, 234, 237. For instance, defendants offer no evidence to establish that Berlanger and the confidential informants had a bona fide physician-patient relationship with a physician. See MCL 333.26428(a)(1). In addition, under § 8(a)(2), a primary caregiver and patient may not collectively possess more marijuana "than was reasonably necessary to ensure the uninterrupted availability of marihuana" for the purpose of treating or alleviating the patient's serious or debilitating medical condition. Yet, in this case, defendants were in possession of such a large quantity of marijuana that they were able to sell to random buyers as well as meet the needs of their patients. Given their apparent surplus, they clearly had more marijuana than was "reasonably necessary" to ensure uninterrupted availability for their patients.

For all these reasons, defendants were not entitled to a § 8 defense.[4] Any motion by their attorneys to raise such a defense would have been futile. Counsel is not ineffective for failing to raise futile motions. *Brown*, 279 Mich App at 142. Defendants have also failed to establish that there was a reasonable probability that the result of the proceedings would have been different had counsel moved to dismiss under § 8. *Trakhtenberg*, 493 Mich at 51. Their ineffective assistance claims based on counsels' failure to raise a § 8 defense are without merit.

---

[4] On appeal, in connection with § 8, defendants argue that the prosecution and the trial court misstated the law when they repeatedly stated that a primary caregiver may only transfer marijuana to a patient to whom the caregiver is connected through the Michigan Department of Licensing and Regulatory Affairs (LARA). Essentially, defendants claim that the jury should have been instructed on a § 8 defense, which may apply even if a defendant "is not formally affiliated with a patient or primary caregiver through the registration process." *Bylsma*, 315 Mich App at 386. However, as we have discussed, defendants failed to present evidence showing that they were primary caregivers for the individuals to whom they sold marijuana and defendants failed to present prima facie evidence for each element of the § 8 defense. In these circumstances, the trial court properly precluded the jury from considering the possibility of a § 8 defense. *Kolanek*, 491 Mich at 412-413. Absent the availability of a § 8 defense, the trial court's and prosecutor's statements regarding LARA and medical marijuana cards were not incorrect. See *State v McQueen*, 493 Mich 135, 156; 828 NW2d 644 (2013).

-4-

## II. CONSTITUTIONALITY OF SECTION 8

Next, defendant argues that, if § 8 is inapplicable to defendants, then MCL 333.26428 is unconstitutionally vague. Further, insofar as this Court considered the meaning of § 8 in *Bylsma*, defendants argue that prohibitions on ex post facto laws prevent the application of this Court's decision to defendants because they committed the offenses in question before we decided *Bylsma*. We disagree.

Because defendants failed to preserve this issue, our review is limited to whether plain error affected their substantial rights. *People v Kowalski*, 489 Mich 488, 505; 803 NW2d 200 (2011). "A statute challenged on constitutional grounds is presumed to be constitutional and will be construed as such unless its unconstitutionality is clearly apparent." *People v Vronko*, 228 Mich App 649, 652; 579 NW2d 138 (1998). A statute may be determined to be "unconstitutionally vague" when "(1) it does not provide fair notice of the conduct proscribed, (2) it confers on the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed, or (3) its coverage is overly broad and impinges on First Amendment Freedoms." *Id.*

In this case, defendants contend that they were not provided with fair notice that their conduct was illegal. "To afford proper notice of the conduct proscribed, a statute must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited." *People v Sands*, 261 Mich App 158, 161; 680 NW2d 500 (2004). "To evaluate a vagueness challenge, this Court must examine the entire text of the statute and give the words of the statute their ordinary meanings." *People v Hrlic*, 277 Mich App 260, 263; 744 NW2d 221 (2007). "A statute is not vague if the meaning of the words in controversy can be fairly ascertained by reference to judicial determinations, the common law, dictionaries, treatises, or their generally accepted meaning." *Vronko*, 228 Mich App at 653. "The proper inquiry is not whether the statute may be susceptible to impermissible interpretations, but whether the statute is vague as applied to the conduct allegedly proscribed in this case." *Id.* at 652. An affirmative defense is not void for vagueness where the statute "provides a person of ordinary intelligence a reasonable opportunity to know what is prohibited and what circumstances must exist in order for the affirmative defense . . . to be applicable." *People v Roberts*, 292 Mich App 492, 500; 808 NW2d 290 (2011) (citation and quotation marks omitted).

At the outset, we note that defendants' constitutional challenges relate to the MMMA. However, defendants were convicted under MCL 333.7401 and MCL 333.7405 of the Public Health Code. As such, the proscribed conduct that defendants engaged in was noticed under the statutes in the Public Health Code. Defendants do not contend that either of the statutes that they were convicted under were unconstitutionally vague. Further, it has been repeatedly recognized that, even after the passage of the MMMA, "[p]ossession, manufacture, and delivery of marijuana remain punishable offenses under Michigan law." *Kolanek*, 491 Mich at 394. In short, a person of ordinary intelligence would clearly understand that the possession, manufacture and delivery of marijuana are prohibited in Michigan.

The issue in this case is whether the circumstances required to assert an affirmative defense under § 8 are unconstitutionally vague. Specifically, defendants contend that MCL 333.26428 did not provide adequate notice of the requirements for asserting a defense under § 8.

To challenge the statute on the ground that it did not provide adequate notice, it is defendants' burden "to identify specific facts that suggested [they] complied with the statute" and to then argue that some term or terms in MCL 333.26428 are vague. See *People v Douglas*, 295 Mich App 129, 135; 813 NW2d 337 (2011). Yet, in this case, defendants offer a blanket assertion that the statute is vague without providing facts showing their efforts to comply with the statute and without even specifying which term, or terms, in MCL 333.26428 they believe to be unconstitutionally vague. At most, defendants note that Berlanger and the confidential informants presented defendants with medical marijuana cards; but the existence of valid registry cards has never been sufficient to show compliance with § 8. See *Kolanek*, 491 Mich at 401 ("Sections 4 and 8 provide separate and distinct protections and require different showings . . ."). Absent more information regarding defendants' efforts to comply with § 8, they cannot contend that the statute's purported vagueness prevented them from meeting the criteria for asserting an affirmative defense under § 8. See *Douglas*, 295 Mich App at 136-137.

In any event, while defendants' argument is not well-developed, it appears from their reference to *Bylsma* that they believe the term "primary caregiver" is vague, such that it was unclear from the statute that defendants could not provide medical marijuana to an unlimited number of patients who presented them with a medical marijuana card. This argument is plainly without merit. MCL 333.26426(d) unequivocally states that a patient "can have no more than 1 primary caregiver, and a primary caregiver may assist no more than 5 qualifying patients with their medical use of marihuana." There is no basis in § 8, or elsewhere in the MMMA, for the assertion that a caregiver can establish a marijuana dispensary to provide marijuana to anyone and everyone with a medical marijuana card. Rather, a person of reasonable intelligence would understand the MMMA's clear directive that a primary caregiver may assist no more than 5 qualifying patients.

Moreover, we rejected defendants' arguments regarding the meaning of "primary caregiver" in *Bylsma*, 315 Mich App at 386. And, contrary to defendants' arguments, we see no reason why *Bylsma* should not be given retroactive effect considering that *Bylsma* did not criminalize previously innocent conduct, it did not overrule previous caselaw, and our decision in *Bylsma*—based on the plain language of the MMMA—was foreseeable. See *People v Vansickle*, 303 Mich App 111, 120; 842 NW2d 289 (2013); *People v Johnson*, 302 Mich App 450, 465-466; 838 NW2d 889 (2013). Defendants' constitutional challenges are without merit.

## III. EXCLUSIONARY RULE

Next, defendant Reed argues that the trial court erred by admitting his statement to police. Specifically, he contends that the affidavit used to obtain the warrant to search his residence did not provide probable cause for the search. Absent a valid warrant, defendant Reed argues that the search was illegal and that his statement made during the search of his home should have been suppressed as fruit of the unlawful search. We disagree.

"We review de novo whether the Fourth Amendment was violated and whether an exclusionary rule applies." *People v Hyde*, 285 Mich App 428, 436; 775 NW2d 833 (2009). "A search or seizure is considered unreasonable when it is conducted pursuant to an invalid warrant . . . ." *People v Hellstrom*, 264 Mich App 187, 192; 690 NW2d 293 (2004). "Generally, in order for a search executed pursuant to a warrant to be valid, the warrant must be based on probable

cause." *Id.* Under the exclusionary rule, "[t]he remedy for a violation [of the Fourth Amendment] is suppression of the unlawfully obtained evidence," including the suppression of a defendant's statement which results from the exploitation of an illegal search. *People v Cartwright*, 454 Mich 550, 558; 563 NW2d 208 (1997); *People v Wagner*, 114 Mich App 541, 553; 320 NW2d 251 (1982).

"The goal of the exclusionary rule . . . is to deter police misconduct," and this goal "would not be furthered where police officers act in objectively reasonable good-faith reliance on a search warrant." *People v Goldston*, 470 Mich 523, 538; 682 NW2d 479 (2004). Consequently, Michigan has recognized a good-faith exception to the exclusionary rule. *Id.* at 541. "The 'good-faith' exception renders evidence seized pursuant to an invalid search warrant admissible as substantive evidence in criminal proceedings where the police acted in reasonable reliance on a presumptively valid search warrant that was later declared invalid." *Hellstrom*, 264 Mich App at 193.

> It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient . . . . Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations. [*Id.* at 195, quoting *United States v Leon*, 468 US 897, 921; 104 S Ct 3405; 82 L Ed 2d 677 (1984).]

Although searches "pursuant to a warrant will rarely require any deep inquiry into reasonableness," suppression "remains an appropriate remedy" where (1) "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth," (2) "where the issuing magistrate wholly abandoned his judicial role," (3) where the affidavit on which the warrant was based was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," or (4) where a warrant was "so facially deficient . . . that the executing officers [could] not reasonably presume it to be valid." *Hellstrom*, 264 Mich App at 196-198 (citation and quotation marks omitted).

Without deciding whether the warrant in this case was based on sufficient probable cause, we find that defendant Reed's statement was admissible under the good-faith exception. See *id.* at 198-199, quoting *Leon*, 468 US at 925 (stating that " 'courts could reject suppression motions posing no important Fourth Amendment questions by turning immediately to a consideration of the officers' good faith' "). The search was conducted pursuant to a warrant, which supports finding that the search was in good faith. See *Leon*, 468 US at 924. Defendants do not assert, and we can find no evidence, that the magistrate was misled by information in the affidavit or that the detective provided false or reckless information in the affidavit. See *Hellstrom*, 264 Mich App at 197. Nor is there any indication that the magistrate abandoned its judicial role. See *id*. Moreover, the supporting affidavit was not "so lacking in indicia of probable cause" that the officers could objectively believe that the warrant was not supported by probable cause. See *id*. The warrant provided information related to a suspected drug selling operation, and the detective requested the warrant based on ample experience investigating drug crimes. See *People v*

*Darwich*, 226 Mich App 635, 639-640; 575 NW2d 44 (1997). Lastly, the warrant was not so facially deficient as to render the officers' reliance on it wholly unreasonable. See *Hellstrom*, 264 Mich App at 198. The warrant described with particularity the premises to be searched and the items to be seized. Accordingly, the good-faith exception applied in this case, and the exclusionary rule did not necessitate the exclusion of defendant Reed's statement. See *Goldston*, 470 Mich at 541.

## IV. AMENDMENT TO THE INFORMATION

Next, defendants argue that the trial court erred by granting the prosecution's request to amend defendant Reed's information. We disagree.

"This Court reviews for an abuse of discretion a trial court's decision to grant or deny a motion to amend an information." *People v Perry*, 317 Mich App 589, 594; 895 NW2d 216 (2016). "A trial court may permit amendment of the information at any time to correct a variance between the information and the proofs, unless doing so would unfairly surprise or prejudice the defendant." *People v Unger*, 278 Mich App 210, 221; 749 NW2d 272 (2008). See also MCL 767.76; MCR 6.112(H). "A defendant may establish unfair surprise by articulating how additional time to prepare would have benefited the defense." *Perry*, 317 Mich App at 594. Reversal is not warranted unless the defendant shows that "the alleged error undermined the reliability of the verdict." *People v McGee*, 258 Mich App 683, 693; 672 NW2d 191 (2003).

Here, defendant Reed's information stated under Count 1 that he was charged with "Controlled substance – delivery/manufacture marijuana," and stated that he "did deliver the controlled substance marijuana; contrary to MCL 333.7401(2)(d)(*iii*)." At trial, the evidence showed that a confidential informant bought "leafy" "processed marijuana" and hash oil capsules from defendant Reed. The capsules tested positive for THC, but the "green leafy marijuana" was not tested. After Reed moved for a directed verdict premised on the assertion that he only delivered THC and did not deliver marijuana, the trial court allowed the prosecution to amend the information from "marijuana" to "marijuana and/or THC."

Defendant Reed now claims that he was unfairly surprised and prejudiced by the amendment to specify "marijuana and/or THC." This argument is without merit. Defendant Reed was originally charged with delivery of marijuana. As defined in the Public Health Code, the term "marihuana" includes "all parts of the plant Cannabis sativa L., growing or not; the seeds of that plant; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant or its seeds or resin." MCL 333.7106(1)(4). "Tetrahydrocannabinol, or THC, is the physiologically active component of marijuana." *People v Koon*, 494 Mich 1, 3 n 3; 832 NW2d 724 (2013). In other words, "[p]ossession of THC extracted from marijuana is possession of marijuana." *People v Carruthers*, 301 Mich App 590, 611; 837 NW2d 16 (2013). See also *People v Campbell*, 72 Mich App 411, 412; 249 NW2d 870 (1976).

Given that the original charge involved delivery of marijuana (and given that marijuana contains THC), defendant Reed could not have been unfairly surprised by a charge of delivery of THC.[5] Cf. *People v Corbeil*, 77 Mich App 691, 702; 259 NW2d 193 (1977). Further, while defendant Reed argues he did not have a chance to prepare a defense to delivery of THC, defendant Reed does not offer any explanation of how additional time would have benefited his defense or what testimony or evidence he could have elicited. See *Perry*, 317 Mich App at 594. Moreover, defendant Reed did not request additional time to recall witnesses or for time to prepare rebuttal witnesses. On this record, defendant Reed has failed to establish that he was unfairly surprised or prejudiced by the prosecution's amendment, MCR 6.112(H), and the trial court did not abuse its discretion, *Perry*, 317 Mich App at 594.

## V. SUFFICIENCY OF THE EVIDENCE

Lastly, defendant Shaw argues that there was insufficient evidence to support her convictions for her involvement at the Cascade dispensary location because the two individuals who purchased marijuana at the Cascade location could not identify her at trial. We disagree.

"Challenges to the sufficiency of the evidence are reviewed de novo." *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007). "We examine the evidence in a light most favorable to the prosecution, resolving all evidentiary conflicts in its favor, and determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond reasonable doubt." *People v Ericksen*, 288 Mich App 192, 196; 793 NW2d 120 (2010). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000) (citation omitted). "Even in a case relying on circumstantial evidence, the prosecution need not negate every reasonable theory consistent with the defendant's innocence, but need merely introduce evidence sufficient to convince a reasonable jury in the face of whatever contradictory evidence the defendant may provide." *People v Hardiman*, 466 Mich 417, 423-424; 646 NW2d 158 (2002) (citation and quotation marks omitted).

On appeal, defendant Shaw's only argument is that the evidence was insufficient because the individuals who purchased marijuana at the Cascade location could not identify her at trial. "[I]t is well settled that identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Although neither purchaser was able to identify defendant Shaw at trial, there was sufficient circumstantial evidence to establish her identity. With regard to the first purchase, a detective was in the dispensary and spoke with defendant Shaw before Eric Belanger entered the dispensary. An officer testified at trial that he conducted surveillance of the Cascade location. He saw the detective leave, and he did not observe defendant Shaw leave before Belanger came and went. In other words, defendant Shaw was working at the dispensary, she was not observed leaving, and Belanger was found with marijuana that he said was bought from the person working at the Cascade location. Defendant Shaw also admitted to police that, in general, she gave marijuana to people at the dispensary, provided that they showed

---

[5] We note that the prosecutor did not attempt to charge defendant Reed with delivery of *synthetic* THC. See MCL 333.7212(1)(d).

her a medical marijuana card and made a donation. Although it was possible that another woman was working on the specific day in question or that Shaw exited out the back before Belanger bought marijuana, the prosecution need not disprove every theory to support a conviction. *Hardiman*, 466 Mich at 423-424. Viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence to support that defendant Shaw was the person that sold marijuana to Belanger.

Likewise, there was sufficient evidence to conclude that defendant Shaw sold marijuana to a confidential informant at the Cascade location. The informant testified that he purchased marijuana from a middle-aged, white female. This description matches defendant Shaw. Following the sale of marijuana, Shaw was observed leaving the Cascade location and she was stopped by police. As such, evidence was presented that defendant Shaw was present at the Cascade location and that someone matching defendant Shaw's description sold marijuana to the informant. Moreover, as noted, defendant Shaw admitted to police that, in general, she sold marijuana to people at the dispensary, provided that they showed her a medical marijuana card. Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have concluded that defendant Shaw sold marijuana to the confidential informant. *Ericksen*, 288 Mich App at 196. Consequently, the evidence was sufficient to support her convictions related to the Cascade location.

Affirmed.

/s/ Joel P. Hoekstra
/s/ William B. Murphy
/s/ Kirsten Frank Kelly

-10-