*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARK JONATHAN CHRISTENSEN,

        Defendant-Appellant.

UNPUBLISHED
April 22, 2021

Nos. 350877; 350878
Huron Circuit Court
LC Nos. 16-306009-FH;
        16-306048-FH

Before: TUKEL, P.J., and SERVITTO and RICK, JJ.

PER CURIAM.

In Docket No. 350877, defendant appeals as of right his jury trial conviction of possession with intent to deliver less than five kilograms of marijuana, MCL 333.7401(2)(d)(*iii*). In Docket No. 350878, defendant appeals as of right his jury trial conviction of possession of a controlled substance, dihydrocodeinone, with intent to deliver, MCL 333.7401(2)(b)(*ii*). For the reasons discussed below, we affirm.

## I. FACTS

These cases arise from a traffic stop that occurred on February 5, 2016. Defendant was the passenger in a vehicle that was being driven by his daughter, Alexis Christensen. A law enforcement officer who was following the vehicle saw defendant open the passenger side door and extend his arm in a "tossing manner" and then close the door. During a search of that area, police found three bags of marijuana. The police followed the vehicle to a gas station and defendant was arrested. Surveillance footage of the gas station showed defendant throw something into a trash can. During a search of the gas station dumpster, police found zip lock bags, similar to the ones found with marijuana in them, that had a marijuana odor. The police also searched the vehicle and found two cell phones. Defendant was arrested. While in jail, the police listened to defendant's jail calls. Based on information obtained from those calls, the police obtained a search warrant and searched the vehicle a second time. They discovered pills containing dihydrocodeinone in a bottle inside the passenger side air vent.

Defendant was charged with possession with intent to deliver marijuana and possession with intent to deliver a controlled substance. The trial court denied defendant's pretrial motion to

dismiss or to assert an affirmative defense under the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq*. At trial, the prosecution presented expert testimony that, based on the totality of the circumstances, it appeared that the marijuana and pills were intended for delivery. Defendant's mother, Barbara Christensen Stimson, and daughter, Alexis, both testified for the defense. Stimson testified that she was a medical marijuana caregiver and that the marijuana in the vehicle belonged to her and was for a medical marijuana patient and her personal use. Alexis testified that she was an addict and that she had hidden the pills in the car. The jury convicted defendant of the charged offenses.

## II. DEFENDANT'S BRIEF ON APPEAL

In a single brief that addresses both appeals, defendant argues that the trial court erred by denying his motion to dismiss the marijuana charge or, in the alternative, to present an affirmative defense under § 8 of the MMMA, MCL 333.26428. We disagree.

## A. STANDARD OF REVIEW

This Court reviews for an abuse of discretion a trial court's ruling on a motion to dismiss. *People v Bylsma*, 315 Mich App 363, 376; 889 NW2d 729 (2016). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Id*. (quotation marks and citation omitted). Issues regarding the statutory interpretation of the MMMA are reviewed de novo. *Id*.

## B. SECTION 8 AFFIRMATIVE DEFENSE

"Section 8(a) of the MMMA provides any patient or primary caregiver—regardless of registration with the state—with the ability to assert an affirmative defense to a marijuana-related offense." *People v Hartwick*, 498 Mich 192, 226; 870 NW2d 37 (2015). "A defendant seeking to assert the MMMA's statutory affirmative defense must present prima facie evidence for each element of § 8(a)." *Id*. at 228. The affirmative defense is presumed valid where the evidence establishes the following elements:

> (1) A physician has stated that, in the physician's professional opinion, after having completed a full assessment of the patient's medical history and current medical condition made in the course of a bona fide physician-patient relationship, the patient is likely to receive therapeutic or palliative benefit from the medical use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition;

> (2) The patient and the patient's primary caregiver, if any, were collectively in possession of a quantity of marihuana that was not more than was reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition; and

> (3) The patient and the patient's primary caregiver, if any, were engaged in the acquisition, possession, cultivation, manufacture, use, delivery, transfer, or transportation of marihuana or paraphernalia relating to the use of marihuana to

treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition. [MCL 333.26428(a)(1) to (3).]

A defendant is required to prove the affirmative defense by a preponderance of the evidence. *Hartwick*, 498 Mich at 228 n 69. If a defendant establishes these elements and no questions of fact exist, the defendant is entitled to dismissal. *Id.* at 227. If questions of fact exist, then the § 8 defense must be submitted to the jury. *Id.* However, if a defendant fails to present sufficient evidence, then the trial court must deny the motion to dismiss and the defendant is not permitted to present the § 8 defense to the jury. *Id.*

As explained in *Hartwick*, the first element, § 8(a)(1), has three elements:

> (1) The existence of a bona fide physician-patient relationship,
>
> (2) in which the physician completes a full assessment of the patient's medical history and current medical condition, and
>
> (3) from which results the physician's professional opinion that the patient has a debilitating medical condition and will likely benefit from the medical use of marijuana to treat the debilitating medical condition. [*Id.* at 229.]

With regard to the second element, § 8(a)(2), the Court explained:

> A patient seeking to assert a § 8 affirmative defense may have to testify about whether a specific amount of marijuana alleviated the debilitating medical condition and if not, what adjustments were made to the consumption rate and the amount of marijuana consumed to determine an appropriate quantity. Once the patient establishes the amount of usable marijuana needed to treat the patient's debilitating medical condition, determining whether the patient possessed "a quantity of marihuana that was not more than was reasonably necessary to ensure [its] uninterrupted availability" also depends on how the patient obtains marijuana and the reliability of this source. This would necessitate some examination of the patient/caregiver relationship. [*Id.* at 234-235 (alteration in original).]

Finally, the third element, § 8(a)(3),

> requires that both the patient's and the primary caregiver's use of marijuana be for a medical purpose, and that their conduct be described by the language in § 8(a)(3). Thus, patients must present prima facie evidence regarding their use of marijuana for a medical purpose regardless whether they possess a registry identification card. Primary caregivers would also have to present prima facie evidence of their own use of marijuana for a medical purpose and any patients' use of marijuana for a medical purpose. [*Id.* at 237.]

Furthermore, "in order for such a defendant to be entitled to raise a defense under § 8, he or she must qualify as a 'patient' or 'primary caregiver' as those terms are *defined and limited under the MMMA*." *Bylsma*, 315 Mich App at 380. "Qualifying patient" or "patient" means "a

person who has been diagnosed by a physician as having a debilitating medical condition." MCL 333.26423(l). "Primary caregiver" or "caregiver" means "a person who is at least 21 years old and who has agreed to assist with a patient's medical use of marihuana and who has not been convicted of any felony within the past 10 years and has never been convicted of a felony involving illegal drugs or a felony that is an assaultive crime as defined in section 9a of chapter X of the code of criminal procedure, 1927 PA 175, MCL 770.9a." MCL 333.26423(k). However,

> a defendant may not raise a § 8 defense in a prosecution for patient-to-patient transactions involving marijuana, caregiver-to-caregiver transactions involving marijuana, transactions that do not involve a patient for whom the defendant serves as a *primary* caregiver, and transactions involving marijuana that do not involve the defendant's own *primary* caregiver, as "patient" and "primary caregiver" are defined and expressly limited under the act. [*Bylsma*, 315 Mich App at 384.]

## C. ANALYSIS

At a hearing on October 3, 2016, the trial court considered defendant's motion regarding § 8 of the MMMA. Defendant argued that he was a medical marijuana patient who had a right to possess medical marijuana and that he should be permitted to assert the affirmative defense at trial. Defendant further argued that while there is no medical marijuana defense for distributing marijuana, a jury may not believe that he was distributing the marijuana. Defendant asserted that his defenses were that the marijuana did not belong to him and that he did not intend to distribute it and, in the alternative, that he had a right to possess a small amount of marijuana under the law.

The trial court concluded that defendant had not established all elements of the § 8 affirmative defense. With regard to the first element (a bona fide physician-patient relationship), the court found that the physician certification form submitted by defendant was insufficient. With regard to the second element (an amount of marijuana reasonably necessary to treat the patient's condition), the court found that there was no evidence indicating that the amount involved was reasonably necessary. However, the court concluded that defendant could renew his motion and present additional proofs before trial.

Defendant later filed a supplement to his motion with an affidavit from a doctor who prescribed defendant medical marijuana. Defendant asserted that the affidavit explained why he was prescribed medical marijuana and showed that defendant had a long-standing relationship with the doctor. The prosecution argued that there was no evidence of a bona fide physician-patient relationship or that the physician created and maintained records of the patient's condition in accordance with medically accepted standards. The prosecution further argued that there was no evidence that defendant was a caregiver. The trial court concluded that defendant's possession of a medical marijuana card would only be relevant if the jury found that he did not have the intent to deliver and merely possessed the marijuana. Accordingly, the trial court reserved ruling on the motion until the conclusion of the jury trial.

Preliminarily, if a defendant believes that the trial court erroneously denied a motion to dismiss or assert a § 8 defense, "the defendant's remedy is to apply for interlocutory leave to appeal." *People v Kolanek*, 491 Mich 382, 413; 817 NW2d 528 (2012). In this case, although defendant did not apply for interlocutory leave to appeal, the trial court reserved ruling until the

close of the jury trial. Because the jury ultimately convicted defendant of possession of marijuana with intent to deliver, the court never revisited the motion and it was effectively denied after the trial. Nonetheless, defendant should have filed an application for interlocutory leave to appeal the trial court's decision not to rule on the motion before trial.

Regardless, the trial court did not abuse its discretion by denying defendant's motion. First, defendant was not entitled to assert a § 8 defense in this case because he was charged with possessing marijuana with the intent to distribute. Defendant offered no evidence that he was the primary caregiver for any patient. See *Bylsma*, 315 Mich App at 384. Furthermore, defendant failed to present prima facie evidence of each element of the § 8 affirmative defense. With regard to the first element, defendant presented a physician certification form in which his doctor attested that he completed a full assessment of defendant's medical history and current medical condition, and that, in his professional opinion, defendant was likely to receive therapeutic or palliative benefit from the medical use of marijuana to treat or alleviate the medical condition or symptoms. While the prosecution disputes that the written certification was sufficient, a written certification can provide prima facie evidence of the elements of § 8(a). *Hartwick*, 498 Mich at 231 n 77. However, even if the certification was sufficient in this case, defendant failed to establish prima facie evidence of the second and third elements. Defendant failed to establish that the amount possessed was not more than reasonably necessary to ensure the uninterrupted availability of marijuana for the purpose of treating or alleviating defendant's medical condition or symptoms. Defendant did not provide any evidence or testimony in support of this element and likewise fails to provide in his brief on appeal support for his claim that this element was satisfied. Defendant also failed to establish that he was engaged in the medical use of marijuana. In fact, defendant denied that he possessed the marijuana. Therefore, he could not establish that he was engaged in an activity related to the use of marijuana to treat or alleviate his medical condition. Because defendant failed to establish that he was entitled to assert the § 8 defense, the trial court did not abuse its discretion by denying defendant's motion to dismiss under § 8.

### III. DEFENDANT'S STANDARD 4 BRIEF

In a pro se brief filed pursuant to Supreme Court Administrative Order, 2004-6, Standard 4, defendant raises five additional issues.

### A. SECTION 4 IMMUNITY

First, defendant argues that he was arrested and held unlawfully in violation of § 4 of the MMMA. We disagree.

### 1. PRESERVATION AND STANDARD OF REVIEW

"[T]he trial court's ultimate grant or denial of [§ 4] immunity is fact-dependent and is reviewed for clear error." *Id*. at 215. "[S]pecific factual findings made by the trial court in a § 4 immunity hearing are reviewed under the clearly erroneous standard, and questions of law surrounding the grant or denial of § 4 immunity are reviewed de novo." *Id*. at 214-215. In this case, defendant did not file a pretrial motion asserting § 4 immunity. An issue is preserved if it is raised in the trial court and pursued on appeal. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994). Therefore, this issue is not preserved. Unpreserved issues are

reviewed for plain error affecting substantial rights. *People v Allen*, 330 Mich App 116, 119; 944 NW2d 433 (2019).

## 2. ANALYSIS

"Section 4 grants broad immunity from criminal prosecution and civil penalties to 'qualifying patients' and 'primary caregivers.' " *Hartwick*, 498 Mich at 210 (brackets and citations omitted). A defendant must not "dispute any element of the underlying charge when claiming immunity." *Id*. at 216. MCL 333.26424(a) provides:

> A qualifying patient who has been issued and possesses a registry identification card is not subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege, including, but not limited to, civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau, for the medical use of marihuana in accordance with this act, provided that the qualifying patient possesses an amount of marihuana that does not exceed a combined total of 2.5 ounces of usable marihuana and usable marihuana equivalents, and, if the qualifying patient has not specified that a primary caregiver will be allowed under state law to cultivate marihuana for the qualifying patient, 12 marihuana plants kept in an enclosed, locked facility.

As the Court explained in *Hartwick*, the elements of § 4 immunity consist of whether, at the time of the charged offense, the defendant:

> (1) was issued and possessed a valid registry identification card,
>
> (2) complied with the requisite volume limitations of § 4(a) and § 4(b),
>
> (3) stored any marijuana plants in an enclosed, locked facility, and
>
> (4) was engaged in the medical use of marijuana. [*Id*. at 217-218.]

With regard to the first element:

> The court must examine the first element of immunity—possession of a valid registry identification card—on a charge-by-charge basis. In most cases, satisfying the first element will be an all-or-nothing proposition. *A qualifying patient or primary caregiver who does not have a valid registry identification card is not entitled to immunity because the first element required for immunity cannot be satisfied.* Conversely, a qualifying patient or primary caregiver satisfies the first element of immunity if he or she possessed a valid registry identification card at all times relevant to the charged offenses. . . . A qualifying patient or primary caregiver can *only* satisfy the first element of immunity for any charge if all conduct underlying that charge occurred during a time when the qualifying patient or primary caregiver possessed a valid registry identification card. [*Id*. at 218 (emphasis added).]

In this case, defendant was not entitled to § 4 immunity because there was no evidence that he possessed a valid registry identification card at the time of the charged offense. The offense occurred on February 5, 2016. The documents provided by defendant showed that his registry identification card expired on February 1, 2016, and that his new card was issued on March 16, 2016. Although defendant's doctor certified the renewal of defendant's card on February 1, 2016, defendant failed to establish that this is sufficient to claim § 4 immunity. Additionally, as discussed earlier, defendant denied that he possessed the marijuana and failed to establish that he was engaged in the medical use of marijuana. Accordingly, defendant fails to establish plain error.

Defendant also argues that he was merely in the vicinity of the marijuana and, therefore, he was entitled to immunity under MCL 333.26424(j). At the time of defendant's arrest, MCL 333.26424(i), as enacted by 2008 IL 1, provided that "[a] person shall not be subject to arrest, prosecution, or penalty in any manner, . . . solely for being in the presence or vicinity of the medical use of marihuana in accordance with this act[.]" However, because defendant denied that he possessed the marijuana and could not establish that the marijuana was for medical use in accordance with the MMMA, he was not entitled to immunity under former MCL 333.26424(i).

Defendant also claims that, because he was entitled to § 4 immunity, the dihydrocodeinone pills were found as a result of an illegal search and seizure of the vehicle. However, because defendant was not entitled to immunity, his fruit-of-the-poisonous-tree argument is without merit. The subsequent searches of the vehicle did not stem from an unlawful arrest. Moreover, the searches were conducted pursuant to a search warrant. Defendant does not challenge the validity of the warrant or the underlying affidavit.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, defendant argues that he was denied the right to the effective assistance of counsel. We disagree.

### 1. PRESERVATION AND STANDARD OF REVIEW

Whether a defendant has been deprived of effective assistance of counsel is "a mixed question of law and fact[.]" *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). "A judge first must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Appellate courts review the trial court's factual findings for clear error, while questions of constitutional law are reviewed de novo. *Id*. A factual finding is clearly erroneous if this Court is "left with a definite and firm conviction that the trial court made a mistake." *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017) (cleaned up). Defendant failed to preserve his ineffective-assistance-of-counsel issue by filing a motion to remand to the trial court for a *Ginther*[1] hearing. *People v Abcumby-Blair*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 347369); slip op at 8; *People v Heft*, 299 Mich App 69, 80; 829 NW2d

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

266 (2012). Therefore, we review his claims for errors apparent on the record. *People v Hoang*, 328 Mich App 45, 63; 935 NW2d 396 (2019).

## 2. ANALYSIS

"To demonstrate ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient, and that there is a reasonable probability that but for that deficient performance, the result of the trial would have been different." *Id.* at 64 (quotation marks and citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (cleaned up). "A defendant must establish a factual basis for an ineffective-assistance-of-counsel claim." *Id.* "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Savage*, 327 Mich App 604, 617; 935 NW2d 69 (2019) (cleaned up).

Defendant first argues that trial counsel was ineffective for failing to file a motion pursuant to § 4 claiming that defendant's arrest was unlawful. For the reasons discussed earlier, defendant was not entitled to § 4 immunity. Accordingly, a motion under § 4 would have been futile and trial counsel was not ineffective for failing to file a futile motion. *Id.*

Next, defendant argues that trial counsel was ineffective by failing to revisit the § 8 motion. The trial court stated that it would revisit the issue only if the jury convicted defendant of possession, rather than possession with intent to deliver. Because the jury convicted defendant of possession with intent to deliver, there was no basis to revisit the motion and any attempt to do so would have been futile. Again, trial counsel was not ineffective by failing to raise a futile argument. *Id.*

Defendant also argues that trial counsel was ineffective by failing to move for a directed verdict after the testimony of Stimson and Alexis. Defendant asserts that his conviction was against the great weight of the evidence and that the continued trial was a waste of judicial resources. In reviewing a trial court's ruling on a motion for a directed verdict, the evidence is viewed in the light most favorable to the prosecution and credibility inferences are made in support of the jury's verdict. *People v McKewen*, 326 Mich App 342, 347 n 1; 926 NW2d 888 (2018), app held in abeyance ___ Mich ___; 943 NW2d 381 (2020). The prosecution presented evidence that it was defendant who threw the marijuana from the vehicle. The prosecution also presented evidence that the phones, which contained text messages regarding delivery of the marijuana, belonged to defendant. Furthermore, one of the calls that defendant made from jail suggested that the dihydrocodeinone pills belonged to him. The prosecution further presented evidence that the totality of the circumstances, including the packaging of the marijuana and pills, suggested that defendant intended to deliver the marijuana and pills. Although Stimson and Alexis testified that the marijuana and pills belonged to them, the jury was free to disbelieve their testimony. Because a directed verdict would not have been successful, trial counsel was not ineffective for failing to move for a directed verdict.

Next, defendant argues that trial counsel was ineffective by failing to renew his objection to the prosecutor playing recordings of edited jail calls and playing incorrect calls. With regard to defendant's claim that the prosecutor omitted an exculpatory portion of a call, defendant fails to establish the factual basis for this claim. Defendant has not provided any proof of the omission

and the record does not establish his claim. Therefore, this claim fails. *Hoang*, 328 Mich App at 64.

Defendant also argues that trial counsel failed to renew his objection to an incorrect recording of a jail call being played at trial. After the jail calls were played on the first day of trial, the prosecutor informed the court that he had mistakenly played one of the calls that was intended for use at Alexis's trial. In the call, defendant said, "[T]ell the bondsman I've always been to court." Trial counsel indicated that he had not heard that and the trial court stated that it had only heard the mention of a bail bondsman. The prosecutor stated that he would not raise the issue again and argued that a mistrial was not required. Trial counsel argued that a mistrial was appropriate or, at the least, a curative instruction should be given. However, defense counsel also asserted that a curative jury instruction would bring more attention to the recording. The trial court ruled that there was no prejudice because the recording was difficult to hear, there were other statements made by defendant indicating why he would want a bondsman in order to be released from jail, and the statement could be interpreted as meaning that defendant would show up to court. The court also believed that a curative instruction would bring the jury's attention to the statement, but indicated that trial counsel could renew his objection at the end of trial. The following day, the prosecutor confirmed that the disk containing the recorded jail calls that was admitted into evidence was the same disk that had been given to the defense.

"Defense counsel is given wide discretion in matters of trial strategy and there is accordingly a strong presumption of effective assistance of counsel." *People v Unger*, 278 Mich App 210, 253; 749 NW2d 272 (2008). Further, "[d]eclining to raise objections can often be consistent with sound trial strategy." *Id*. Defendant has failed to overcome the presumption that defense counsel's failure to object was a matter of trial strategy. Further, defendant has failed to establish that, but for the alleged error, there was a reasonable probability that the outcome of the trial would have been different. *Hoang*, 328 Mich App at 64.

Defendant next argues that trial counsel was ineffective by failing to investigate a potential alibi witness. There is no evidence in the record, however, that trial counsel did not investigate the witness. Further, defendant has not submitted an affidavit from the witness showing what testimony he could have provided. A defendant's ineffective-assistance-of-counsel claim based on the failure to investigate or call witnesses will fail when the defendant does not produce affidavits describing testimony that would have been elicited from those witnesses or shows how the proposed testimony would have benefited the defense. See *People v Davis*, 250 Mich App 357, 369; 649 NW2d 94 (2002). Therefore, defendant's claim fails.

Finally, defendant argues that trial counsel was ineffective by failing to object to Officer Blaine's presence in the courtroom during the testimony of Detective David Vergison. The record establishes that part way through the first day of trial, the attorneys agreed to sequester witnesses. At that point, the trial court ordered mutual sequestration of witnesses. The sequestration order did not apply to Officer Blaine, the officer-in-charge of the case. Sequestration decisions are within the trial court's discretion. *People v Roberts*, 292 Mich App 492, 502-503; 808 NW2d 290 (2011). Although trial counsel did not object to Officer's Blaine's presence, defendant fails to establish that the trial court would have ordered sequestration of Officer Blaine, who was present at trial as the officer-in-charge of the case. An officer-in-charge, as the designated representative for the people, ordinarily is not subject to a sequestration order. MRE 615. In any event, defendant

also fails to establish that he was prejudiced. Defendant merely claims that Officer Blaine's presence denied him a fair trial, but he fails to elaborate on this claim. Accordingly, defendant fails to establish a reasonable probability that the outcome of the trial would have been different if trial counsel had objected.

## C. ACTUAL INNOCENCE

Defendant also contends that he is actually innocent of the charged offenses and that his conviction of possession of the controlled substance is against the great weight of the evidence. We disagree.

### 1. PRESERVATION AND STANDARD OF REVIEW

With regard to defendant's claim that this Court should grant relief under MCR 7.216(7) based on his actual innocence, there is no preservation requirement. MCR 7.216(7) permits this Court to grant any relief as the case may require. To the extent that defendant raises a great-weight-of-the-evidence claim, defendant failed to preserve this claim by moving for a new trial in the trial court. See *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). "[W]hen a party fails to preserve a great-weight issue for appeal, an appellate court will look for plain error affecting the defendant's substantial rights." *Id*. (quotation marks and citation omitted).

### 2. ANALYSIS

First, defendant argues that possession of marijuana is no longer illegal and the law legalizing the possession and use of marijuana by persons over the age of 21 should apply retroactively. In *People v Anthony*, 327 Mich App 24, 45 n 11; 932 NW2d 202 (2019), this Court explained that "[u]sually in appellate review, we look to the law as it was at the time of the judicial or administrative action from which appeal is taken, and statutory or constitutional amendments are presumed to apply prospectively only absent clear language in them to the contrary." (Alteration in original; cleaned up.) MCL 333.27952 of the Michigan Regulation and Taxation of Marihuana Act (MRTMA), MCL 333.27951 *et seq.*, provides, in part that the purpose of the act is "to make marihuana legal under state and local law for adults 21 years of age or older . . . ." Additionally, one of the intents of the MRTMA is "to prevent arrest and penalty for personal possession and cultivation of marihuana by adults 21 years of age or older[.]" MCL 333.27952 . This language suggests that the statute applies prospectively, and defendant fails to identify any clear statutory language that the MRTMA applies retrospectively. Further, this Court has declined to apply the MRTMA to crimes that occurred before its passage. See, e.g., *People v Turner*, unpublished per curiam opinion of the Court of Appeals, issued April 23, 2020 (Docket No. 347551), p 5 n 3; *People v Allen*, unpublished per curiam opinion of the Court of Appeals, issued October 15, 2019 (Docket No. 344207), p 1 n 1, lv den ___ Mich ___; 944 NW2d 691 (2020). We recognize that unpublished opinions are not binding precedent, but this Court may consider them as instructive or persuasive. *People v Jamison*, 292 Mich App 440, 445; 807 NW2d 427 (2011). We also note that, at the time of the offense, the MRTMA was not in effect. See 2018 IL 1.

Next, defendant argues that he had a valid medical marijuana registration card. As discussed earlier, however, defendant did not have a valid card on the date of the offenses. He has not established that the provision of his renewal paperwork was sufficient under the MMMA.

Defendant also argues that he is actually innocent because Stimson claimed ownership of the marijuana, Alexis confessed ownership of the dihydrocodeinone pills, and defendant's fingerprints were not on any of the evidence. As discussed earlier, the testimony of Stimson and Alexis conflicted with other evidence. In reviewing a trial court's ruling on a motion for a directed verdict, the evidence is viewed the light most favorable to the prosecution and credibility inferences are made in support of the jury verdict. *McKewen*, 326 Mich App at 347 n 1. Similarly, the testimony that defendant's fingerprints were not on the marijuana bags or pill container merely went to the weight of the evidence.

To the extent that defendant argues that his convictions are against the great weight of the evidence, a verdict is against the great weight of the evidence if "the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Cameron*, 291 Mich App at 616-617 (cleaned up). Notwithstanding the testimony of Stimson and Alexis, the prosecution presented other evidence that established a nexus between defendant and the marijuana and dihydrocodeinone pills which supported an inference that defendant intended to deliver the marijuana and pills. Therefore, defendant has not established that his convictions were against the great weight of the evidence or that he was actually innocent.

## D. PROSECUTORIAL MISCONDUCT

Defendant argues that the prosecutor committed misconduct by knowingly allowing false testimony at trial and by withholding an exculpatory photograph. We disagree.

### 1. PRESERVATION AND STANDARD OF REVIEW

"[A] defendant must contemporaneously object and request a curative instruction to preserve an issue of misconduct for appellate review." *People v Solloway*, 316 Mich App 174, 201; 891 NW2d 255 (2016) (alteration in original; cleaned up). Defendant failed to preserve his claims of prosecutorial misconduct by timely and specifically objecting below. See *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). "Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights." *Id*. "[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *Id*. at 64.

### 2. ANALYSIS

First, defendant argues that the prosecutor knowingly allowed Chief David Rothe to provide false testimony at trial. "It is inconsistent with due process when the prosecution allows false testimony from a state's witness to stand uncorrected." *People v Smith*, 498 Mich 466, 475; 870 NW2d 299 (2015). Defendant contends that Chief Rothe's testimony that the dihydrocodeinone pills were hidden in a difficult place to reach was false because it was inconsistent with Officer Blaine's testimony that the pills were easy to access. However, both

Officer Blaine and Chief Rothe testified that the vent had to be removed to access the pills. Defendant also specifically refers to Officer Blaine's preliminary examination testimony that the pill bottle could be easily retrieved by someone who knew exactly where it was and how to get it. The trial testimonies of Officer Blaine and Chief Rothe were not necessarily contradictory. Accordingly, defendant fails to establish that Chief Rothe's testimony was false.

Next, defendant argues that the prosecutor withheld an exculpatory photograph, which misled the jury and swayed its decision. "[A] defendant's right to due process may be violated by the prosecution's failure to produce exculpatory evidence in its possession." *People v Bosca*, 310 Mich App 1, 27; 871 NW2d 307 (2015), app held in abeyance ___ Mich ___; 911 NW2d 465 (2018). To establish such a due-process violation, a defendant must demonstrate that "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) viewed in its totality, is material." *People v Chenault*, 495 Mich 142, 155; 845 NW2d 731 (2014).

In this case, defendant has not demonstrated that any evidence was suppressed. Defendant argues that the prosecution had a photograph of the glove compartment showing the pill bottle, which disproved Chief Rothe's testimony and showed that the pills were easily accessible. Defendant claims that the prosecutor committed misconduct by failing to introduce the photograph at trial. However, defendant does not argue that the prosecution actually withheld the photograph from the defense. In fact, defendant concedes that the photograph was used at a prior hearing, which indicates that defendant was aware of the photograph. Further, defendant fails to establish that the prosecutor was required to introduce the photograph at trial. Defendant was free to offer the photograph at trial. Therefore, defendant has failed to establish a plain error affecting his substantial rights.

## E. DUE PROCESS

Finally, defendant argues that he was denied due process by the trial court's denial of his motion to dismiss and by the trial court's comments to the jury about his failure to testify. We disagree.

### 1. PRESERVATION AND STANDARD OF REVIEW

An issue is preserved if it is raised in the trial court and pursued on appeal. *Peterman*, 446 Mich at 183. Defendant did not raise these due-process arguments below. Therefore, these claims are unpreserved. Unpreserved issues are reviewed for plain error affecting substantial rights. *Allen*, 330 Mich App at 119.

### 2. ANALYSIS

Defendant first argues that the trial court ruled contrary to law by denying his motion to dismiss. As discussed earlier, defendant was not entitled to assert a § 8 affirmative defense or to dismissal. Furthermore, because the jury convicted defendant of possession with intent to deliver marijuana, there was no basis to revisit the motion after trial. Therefore, the trial court did not err and defendant was not denied due process.

Defendant additionally argues that the trial court erroneously commented about his not testifying at trial. In *People v Hampton*, 394 Mich 437, 438; 231 NW2d 654 (1975), the Michigan Supreme Court held:

> In a criminal case where the defendant elects not to testify, the court *may* instruct on the effect thereof, unless defense counsel (or the defendant acting *in propria persona*) expressly requests, before the Court instructs the jury, that no instruction be given on the subject in which event no instruction on the subject shall be given.

In this case, the trial court instructed the jury: "Every defendant has the absolute right not to testify. When you decide the case, you must not consider the fact that he did not testify, it must not affect your verdict - your verdict in any way." Defendant did not expressly request that no instruction be given. Accordingly, there was no error or due-process violation.

Affirmed.

/s/ Jonathan Tukel
/s/ Deborah A. Servitto
/s/ /Michelle M. Rick